1  SCOTT N. SCHOOLS, SC SBN 9990
   United States Attorney
2  JOANN M. SWANSON, CSBN 88143
   Assistant United States Attorney
3  Chief, Civil Division
   ILA C. DEISS, NY SBN 3052909
4  Assistant United States Attorney

5      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102
6      Telephone: (415) 436-7124
       FAX: (415) 436-7169
7
   VICTOR M. LAWRENCE, DC Bar: 449052
8  Senior Litigation Counsel
   Office of Immigration Litigation
9  U.S. Department of Justice, Civil Division
   JEFFREY S. ROBINS, NY SBN 4355244
10 Trial Attorney
   Office of Immigration Litigation
11 U.S. Department of Justice, Civil Division

12     P.O. Box 878, Ben Franklin Station
       Washington, DC 20044
13     (202) 616-1246
       FAX: (202) 233-0397
14
   Attorneys for Defendants
15

16                 UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                  SAN FRANCISCO DIVISION

19 CATHOLIC CHARITIES CYO              )
   (SAN FRANCISCO), *et al.*,          )   No. C 07-1307 PJH
20                                     )
           Plaintiffs,                 )   1. DEFENDANTS' NOTICE OF MOTION
21                                     )   AND MOTION TO DISMISS PLAINTIFFS'
           v.                          )   COMPLAINT;
22                                     )   2. MEMORANDUM OF POINTS AND
   MICHAEL CHERTOFF, Secretary,        )   AUTHORITIES IN SUPPORT OF MOTION
23 U.S. Department of Homeland         )   TO DISMISS;
   Security, *et al.*,                 )   3. [PROPOSED] ORDER
24                                     )
           Defendants.                 )   Hearing Date: August 1, 2007 Time: 9:00 a.m.
25 _____ )   Courtroom: 3, 17th Floor

26

27

28 DEFENDANTS' NOTICE AND MOTION TO DISMISS
   No. C 07-1307 PJH

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT .................................... 1

II.    BACKGROUND AND FACTS ......................................................... 2

    A.    The U-Visa Provision of the Victims of Trafficking and Violence
Protection Act of 2000 ......................................................... 2

    B.    The Government's Handling of U Visa Applicants After Passage of the
VTVPA ......................................................................... 3

III.    ARGUMENT ............................................................................ 5

    A.    Plaintiff does not have standing .............................................. 6

        1.    The Organizational Plaintiffs Should be Dismissed Because They
Lack Standing ............................................................... 7

        2.    The Individual Plaintiffs Should Be Dismissed Because They Lack
Standing ....................................................................... 8

    B.    Plaintiffs Lack a Private Right of Action .................................. 13

    C.    Plaintiffs Have No Right of Action Under Article II, Sections 1 and 3 of
the Constitution ............................................................... 13

    D.    The Court Lacks Jurisdiction to Consider Plaintiffs' Claim that
Defendants Have Failed To Promulgate Regulations ........................... 14

        1.    Plaintiffs Cannot Seek Judicial Review For Unreasonable Delay
Under The APA Where Defendants' Actions Are Not Legally
Required ..................................................................... 14

        2.    Plaintiffs Cannot Seek Judicial Review For Arbitrary and
Capricious Action Under The APA Because Defendants' Actions
are not "Final Agency Actions" .............................................. 16

    E.    Plaintiffs' Claim Regarding the Defendants' Alleged Failure to Adjudicate
and Issue U Visas, and the Resulting Impact on Eligibility, Derivatives,
and Available Benefits are not Ripe for Adjudication by this Court. ...... 17

F.      Plaintiffs' Fifth Cause of Action For "Unlawful Failure to Publish Employment Authorization Rule for Notice and Comment," Should Be Dismissed for Failing to State a Claim for which Relief May Be Granted. ................................................................................. 18

G.      Plaintiffs' Equal Protection Claims Fail ................................................ 20

    1.      Plaintiffs Fail to Demonstrate a Colorable Equal Protection Claim ................................................................. 20

    2.      The Unequal Burden of the Statute Alleged In Plaintiffs' Ninth Cause of Action Has A Rational Basis ........................................ 21

H.      Plaintiffs Fail to Establish a Protected Due Process Interest in the Promulgation of Regulations, Adjudication of Applications, or Potential Benefits. ................................................................................. 22

I.      Even if the Court Finds Some Basis of Jurisdiction, the Court Should Not Grant Plaintiffs' Requests for Injunctive or Declaratory Relief .............. 24

CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

Abbott Laboratories v. Gardner,
    387 U.S. 136, 148 (1967) ................................................... 24

Alcaraz v. Block,
    746 F.2d 593 (9th Cir. 1984) ............................................. 19

Alexander v. Whitman,
    114 F.3d 1392 (3d Cir. 1997) ............................................ 21

Amoco Prod. Co. v. Vill. Of Gambell, Alaska,
    480 U.S. 531, 542 (1987) ................................................... 24

Ass'n of Data Processing Serv. Orgs. v. Camp,
    397 U.S. 150 (1970) ........................................................... 7

Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation,
    792 F.2d 782 (9th Cir. 1986) ............................................. 17

Association of Am. Med. Colls. v. United States,
    217 F.3d 770 (9th Cir. 2000) ............................................... 2

Atchison Topeka & Santa Fe Railway v, Wichita Board of Trade,
    412 U.S. 800 (1973) ......................................................... 19

Bell Atlantic Corp. v. Twombly,
    – S.Ct.–, 2007 WL 1461066 (U.S. S.Ct. May 21, 2007) ................... 6

Bennett v. Spear,
    520 U.S. 154, 178 (1997) ................................................... 16

Biodiversity Legal Foundation v. Badgley,
    309 F.3d 1166 (9th Cir. 2004) ...................................... 15, 24

Board of Regents v. Roth,
    408 U.S. 564, 569 (1972) ................................................... 22

Brock v. Pierce County,
    476 U.S. 254, 260-62 (1986) ....................................... 14, 15

Christy v. Hodel,
    857 F.2d 1324, 1331 (9th Cir. 1988) ................................. 20

iii

City of Los Angeles v. Lyons,
        461 U.S. 95, 111 (1983) ............................................................... 6, 7

Congregation Kol Ami v. Abington Township,
        309 F.3d 120, 133 (3d Cir. 2002) ............................................... 21

Cooney v. Edwards,
        971 F.2d 345, 346 (9th Cir. 1992) .............................................. 17

FDIC v. Henderson,
        940 F.2d 465, 475 (9th Cir. 1991) .............................................. 23

First Pacific Bancorp, Inc. v. Helfer,
        224 F.3d 117, 1121 (9th Cir. 2000) ............................................ 13

Freeman v. City of Santa Anana,
        69 F.3d 1180, 1187 (9th Cir. 1995) ............................................ 20

Gottlieb v. Pena,
        41 F.3d 730, 733 (D.C. Cir. 1994) .............................................. 14

Grell v. Laci Le Beau Corp.,
        73 Cal.App. 4th 1300, 1306 (1st Dist. 1999) .............................. 8

Gunderson v. Hood,
        268 F.3d 1149, 1155 (9th Cir. 2001) .......................................... 19

Hendrickson v. FDIC,
        113 F.3d 98, 101 (7th Cir. 1997) ............................................ 15, 19

In Re Siggers,
        132 F.3d 333, 336 (6th Cir. 1997) .............................................. 15

INS v. Legalization Assistance Project,
        510 U.S. 1301, 1305-06 (1993) ......................................... 6, passim

Jarrett v. Roser,
        426 F.2d 213, 216 (9th Cir. 1970) .............................................. 25

Liesegang v. Secretary of Veteran Affairs,
        312 F.3d 1368, 1377 (Fed. Cir. 2002) ........................................ 15

Lewis v. Casey,
        518 U.S. 343, 349 (1996) ............................................................ 6, 7

Lujan v. National Wildlife Federation,
    497 U.S. 871, 883(1990) ............................................................... 6, 7

Mathews v. Diaz,
    426 U.S. 67, 82 (1976) ................................................................... 21

Motor Vehicle Mfrs. Assn. v. State Farm Mutual,
    463 U.S. 29 (1983) ......................................................................... 19

National Credit Union Admin. v. First National Bank & Trust Co.,
    522 U.S. 479, 492 (1998) ................................................................ 7

Norton v. Southern Utah Wilderness Alliance,
    542 U.S. 55, 61 (2004) ................................................................... 14

Nunez v. City of Los Angeles,
    147 F.3d 867, 871 (9th Cir. 1998) ................................................. 22

Ohio v. EPA,
    997 F.2d 1520 (D.C. Cir. 1993) ..................................................... 19

Ohio Adult Parole Authority  v. Woodard,
    523 U.S. 272, 280 n.2 (1998) ........................................................ 23

Olim v. Wakinekona,
    461 U.S. 238 250 (1983) ............................................................... 23

Opera Plaza Residential Parcel Homeowners Association v. Hoang,
    376, F.3d 831, 836 (9th Cir. 2004) ................................................ 13

Orantes-Hernandez v. Thornburgh,
    919 F.2d 549, 558 (9th Cir. 1990) ................................................. 24

Oregon Natural Desert Ass'n v. U.S. Forest Service,
    465 F.3d 977, 984 (9th Cir. 2006) ................................................. 16

Quest Corp. V. City of Surprise,
    434 F.3d 1176, 1180 (9th Cir. 2006) .............................................. 6

Reed v. Norman,
    309 P.2d 809 (1957) ...................................................................... 8

Reno v. CSS,
    509 U.S. 43, 59 (1993) ................................................................... 24

Roberts v. Corrothers,
 812 F.2d 1173, 1177(9th Cir. 1987) ................................................................. 6

Roberts v. Spaulding,
 783 F.2d 867, 870 (9th Cir. 1986) ............................................................. 22, 24

San Francisco Baykeeper v. Whitman,
 297 F.3d at 885-86 .............................................................................................. 14

Skelly Oil Co. v. Phillips Petroleum Co.,
 339 U.S. 667, 671-72 (1950) ............................................................................. 25

Sierra Club v. Whitman,
 268 F.3d 898, 904 (9th Cir. 2001) ................................................................... 16

St. Clair v. City of Chico,
 880 F.2d. 199, 201 (9th Cir. 1989) ...................................................................... 2

Stock West, Inc. v. Confederated Tribes,
 873, F.2d 1221, 1225 (9th Cir. 1989) ............................................................ 5, 6

Steel Company v. Citizens for a Better Environment,
 523 U.S. 83, 102 n.4 (1988) .............................................................................. 13

Suter v. Artist M.,
 503 U.S. 347, 363 (1992) .................................................................................... 13

Thomas v. Anchorage Equal Rights Commission,
 220 F.3d 1124 (9th Cir.) ..................................................................................... 17

Thornhill Publishing Co. v. Gen. Te. & Elecs. Corp.,
 594 F.2d 730, 733 (9th Cir. 1979) ...................................................................... 6

Toilet Goods Assn., Inc. v. Gardner.
 387 U.S. 158 (1967) ............................................................................................ 24

Troy Corp v. Browner,
 120 F.3d 277 (D.C. Cir. 1977) ........................................................................... 19

TVA v. Hill,
 437 U.S. 305 (1982) ............................................................................................ 24

United States v. Lopez-Florez,
 63 F.3d 1468, 1473-74 (9th Cir. 1995) ............................................................ 21

United States v. James Daniel Good Real Prop.,
    510 U.S. 43, 64 (1993) ............................................................. 15

United States v. Montalvo-Murillo,
    495 U.S. 711 (1990) ............................................................. 15

United States v. Navarro-Vargas,
    408 F.3d 1184, 1206 (9th Cir.2005) .............................................. 13

Valdez v. Rosenbaum,
    302 F.3d 1039, 1045 (9th Cir. 1986) ......................................... 22, 23

Vance v. Bradley,
    440 U.S. 93, 97 (1979) ............................................................. 21

Vermont Yankee Nuclear Power Corp. v. NRDC,
    435 U.S. 519, 543 (1978) ..................................................... 12, 24

Walters v. Reno,
    143 F.3d 1032, 1048 (9th Cir. 1998) ............................................. 24

Weinberger v. Romero-Barcelo,
    456 U.S. 305, 326-27 (1982) ..................................................... 24

W. Watersheds Project v. Matejko,
    468, F.3d 1099, 1110 (9th Cir. 2006) ............................................. 14

**Administrative Procedures Act**

5 U.S.C. § 553(b)(3) .................................................................... 18

5 U.S.C. § 704 ........................................................................... 16

5 U.S.C. § 706(1) ........................................................................ 14

5 U.S.C. § 706(2)(a) ..................................................................... 16

**Declaratory Judgement Act**

28 U.S.C. § 2201 ........................................................................ 24

**Immigration and Nationality Act of 1952; as amended:**

Section 101(a)(15)(T),
    8 U.S.C. § 1101(a)(15)(T) ................................................................ 3

Section 101(a)(15)(U),
    8 U.S.C. § 1101(a)(15)(U) ............................................................ 1, 18

Section 101(a)(15)(U)(i)(I-IV),
    8 U.S.C. § 1101(a)(15)(U)(i)(I-IV) ................................................. 4

Section 101(a)(15)(U)(iii),
    8 U.S.C. § 1101(a)(15)(U)(iii) ......................................................... 2

Section 201(b)(2)(A)(i),
    8 U.S.C. § 1151(b)(2)(A)(i) ........................................................... 22

Section 214(n),
    8 U.S.C. § 1184(n) .......................................................................... 3

Section 214(p),
    8 U.S.C. § 1184(p) .......................................................................... 1

Section 214(p)(1),
    8 U.S.C. § 1184(p)(1) ............................................................... 12, 22

Section 214(p)(3),
    8 U.S.C. § 1184(p)(3) .................................................................... 16

Section 214(p)(3)(A),
    8 U.S.C. § 1184(p)(3)(A) ............................................................... 18

Section 214(p)(3)(B),
    8 U.S.C. § 1184(p)(3)(B) ............................................................... 18

Section 240A
    8 U.S.C. § 1229b ........................................................................... 22

Section 245(1),
    8 U.S.C. § 1255(1) .......................................................................... 3

Section 245(m),
    8 U.S.C. § 1255(m) ......................................................................... 1

**Victims of Trafficking and Violence Protection Act**

Pub. L. 106-386 ............................................................................................................ 2, 3

    Section 107(c) ....................................................................................................... 3

    Section 1513(a)(1)(B) ........................................................................................ 22

    Section 1513(a)(2)(A) ......................................................................................... 2

    Section 1513(a)(2)(B) ......................................................................................... 2

    Section 1513(a)(2)(C) ......................................................................................... 3

**Violence Against Women Act of 2005**

Pub. L. 109-162
    Section 828, 119 Stat. 2960 (2006) .................................................................. 1, 3

## <u>REGULATIONS</u>

8 C.F.R § 274a.12(c)(11) .............................................................................................. 4

8 C.F.R § 274a.12(c)(14) ............................................................................................ 19

8 C.F.R § 274a.12(c)(18) .............................................................................................. 4

8 C.F.R § 274a.13(a)(2) .............................................................................................. 20

8 C.F.R § 274(a)(13)(d) .............................................................................................. 18

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2     PLEASE TAKE NOTICE that on August 1, 2007, at 9:00 a.m., or as soon thereafter as the

3  matter may be heard in Courtroom No. 3 of the above-entitled Court, located at 450 Golden Gate

4  Avenue, San Francisco, CA 94102, defendants Secretary of Department of Homeland Security

5  Michael S. Chertoff, United States Citizenship and Immigration Services ("USCIS"), U.S.

6  Department of Homeland Security, ("defendants" or "DHS"), will hereby move this Court for an

7  order dismissing the Complaint for Declaratory and Injunctive Relief filed by plaintiffs, pursuant to

8  Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter

9  jurisdiction and for failure to state a claim upon which relief may be granted by this Court.

10     This motion is based upon this Notice of Motion and Motion to Dismiss, the Memorandum

11  of Points and Authorities filed herewith, the Declaration of Michelle Young (USCIS Supervisory

12  Adjudications Officer for the U visa program at the Vermont Service Center), the pleadings, records

13  and papers filed herein, and such other and further oral and documentary evidence and legal

14  memoranda as may be presented at or by hearing on this Motion to Dismiss.

15                                             Respectfully submitted,

16

17  SCOTT N. SCHOOLS                         PETER D. KEISLER
    United States Attorney                    Assistant Attorney General
    JOANN M. SWANSON                          DAVID J. KLINE
18  Assistant United States Attorney          Principal Deputy Director
    Chief, Civil Division                     VICTOR M. LAWRENCE
19  ILA C. DEISS                              Senior Litigation Counsel
    Assistant United States Attorney
20                                            /s/ Jeffrey S. Robins
21                                            JEFFREY S. ROBINS
                                              Trial Attorney
22                                            U.S. Department of Justice
                                              Civil Division
23                                            Office of Immigration Litigation
                                              P.O. Box 878, Ben Franklin Station
24                                            Washington, D.C. 20044
                                              (202) 616-1246
25

26

27

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs bring this class action Complaint to challenge what they allege to be unlawfully withheld and unreasonably delayed action in promulgating regulations and agency adjudication of "U" visas in accordance with the Victims of Trafficking and Violence Protection Act ("VTVPA") of 2000, Pub. L. 106-386, 114 Stat. 1464 (2000).[1/]  However, the VTVPA of 2000 did not require the agency to promulgate regulations to implement the act.  The agency had no directive to promulgate regulations until the recent enactment of the Violence Against Women Act of 2005 ("VAWA 2005"), Pub. L. 109-162.  That law directed that USCIS promulgate such regulations within 180 days of enactment, but the provision is directory rather than mandatory and may not be enforced by the Court.  In any event, Defendants sent the regulations in question to the Office of Management and Budget on April 11, 2007, for approval for publication in the Federal Register as an interim final rule.  See Exhibit A, Office of Management and Budget (OMB), Office of Information and Regulatory Affairs (OIRA), Executive Order Submissions Under Review as of May 29, 2007.

All plaintiffs in this case, eight organizational plaintiffs and nineteen individual plaintiffs, also lack standing to pursue such a claim, as the related statutes were not intended for the benefit of the organizations, and each individual plaintiff has either received interim relief in the form of deferred action, is presently having their application for interim relief adjudicated, and/or has received some other benefit, the result of which is that all but two plaintiffs presently have employment authorization, and the remaining plaintiffs may presently be eligible for employment authorization.  Of those plaintiffs that have been granted deferred action, if they are later deemed eligible for a U visa, applicable agency policy will enable them to accrue time towards lawful

_____

[1/]  Plaintiffs refer to this same law throughout their Complaint as the "Crime Victims Act" or the "Victims Protections Act."  Defendants refer to it herein as the VTVPA.  Title V of the VTVPA, which contains the U visa sections, is also referred to as the "Battered Immigrant Women Protection Act of 2000."  The sections of the VTVPA pertaining to U nonimmigrant status are codified as sections 101(a)(15)(U), 214(p) and 245(m) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101(a)(15)(U), 1184(p) and 1255(m).

DEFENDANTS' NOTICE AND MOTION TO DISMISS
No. C 07-1307 PJH                              1

1    permanent residence in the same manner as if they had received their U visa on the date that they

2    received deferred action.  None of these plaintiffs are able to show a concrete injury-in-fact, and thus,

3    they lack standing.[2]/  Read together, the two relevant acts only contemplate the adjudication and

4    issuance of U visas once regulations have been promulgated.  Thus, this Court also lacks jurisdiction

5    under the Administrative Procedure Act (APA) as there has been no final agency action.  Finally,

6    plaintiffs lack a private right of action under the statutes they allege violations of and fail to state any

7    viable constitutional claim.  Accordingly, defendants move this Court to dismiss the complaint for

8    failure to state and claim and lack of jurisdiction.

9                                   **II.  BACKGROUND AND FACTS**

10   **A.  The U-Visa Provision of the Victims of Trafficking and Violence Protection Act of 2000**

11             Congress created the "U" nonimmigrant classification ("U visa") for qualifying victims of

12   certain criminal activity with the enactment of the VTVPA of 2000.  Congress explained its

13   "purpose" in passing the law allowing for U visas, at Section 1513(a)(2)(A) of the VTVPA.

14   According to Congress:

15        The purpose . . . is to create a new nonimmigrant visa classification that will strengthen
          the ability of law enforcement agencies to detect, investigate, and prosecute cases of
16        domestic violence, sexual assault, trafficking of aliens, and other crimes described in
          section 101(a)(15)(U)(iii) of the Immigration and Nationality Act committed against
17        aliens, while offering protection to victims of such offenses in keeping with the
          humanitarian interests of the United States.
18
     VTVPA, Pub. L. 106-386 at § 1513(a)(2)(A).
19
             Congress recognized that the new nonimmigrant classification could facilitate the reporting
20
     of crimes to law enforcement officials by illegal aliens, and enable those officials to have a means of
21
     generating cooperation from such aliens during investigations and prosecutions.  Id. at §
22
     1513(a)(2)(B).  Congress also recognized that, "[p]roviding temporary legal status" to aliens
23

24            [2]/For motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1),
     the moving party may attack the jurisdictional allegations of the complaint by submitting affidavits
25   or other evidence.  Association of Am. Med. Colls. v. United States, 217 F.3d 770, 778 (9th Cir.
     2000); St. Clair v.  City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  Accordingly, defendants attach
26   several exhibits to this motion to aid the Court in understanding why it lacks jurisdiction over this
     matter.
27

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                              2

1  "severely victimized by criminal activity also comports with the humanitarian interests of the United

2  States." Id.  Congress further enabled the Attorney General with discretion to convert the status of

3  such immigrants to that of permanent residents "when doing so is justified on humanitarian grounds,

4  for family unity, or is otherwise in the public interest." Id. at § 1513(a)(2)(C).

5        Congress's creation of the U visa provisions was only a small portion of a much larger act

6  aimed at curbing trafficking of women and providing services to victims of violence.  In addition to

7  the U visa, in the VTVPA Congress created two other protections: (1) the "T" nonimmigrant

8  classification ("T visa");[3/] and (2) "Continued Presence," which permits the Secretary of Homeland

9  Security to ensure the continued presence of trafficking victims who are potential witnesses in a

10  criminal investigation or prosecution.  While Congress directed the promulgation of regulations to

11  implement the key provisions of "Continued Presence," within 180-days, see VTVPA, Pub. L. 106-

12  386 at § 107(c), Congress did not similarly direct the promulgation of regulations the U visa sections

13  of the VTVPA until Congress passed the Violence Against Women Act of 2005 (VAWA 2005),

14  which the president signed on January 5, 2006.  See VAWA 2005, Pub. L. 109-162 at § 828, 119

15  Stat. 2960 (2006) (Directing that "not later than 180 days after the date of enactment . . ., the

16  Attorney General, the Secretary of Homeland Security, and the Secretary of State shall promulgate

17  regulations to implement the provisions contained in the Battered Immigrant Women Protection Act

18  of 2000").

19  **B.  The Government's Handling of U Visa Applicants After Passage of the VTVPA**

20        On August 30, 2001, and October 8, 2003, the Immigration and Naturalization Service (INS)

21  and U.S. Citizenship and Immigration Services (USCIS) issued interim guidance to establish, inter

22  alia, interim procedures to be followed while the agency acted to promulgate regulations

23  implementing the U visa and its protections.  See Exhibit B, August 30, 2001 Memorandum from

24  Michael D. Cronin to Michael A. Pearson re: Victims of Trafficking and Violence Protection Act of

25

26      [3/]The sections of the VTVPA pertaining to T nonimmigrant status are codified as sections

27  101(a)(15)(T), 214(n) and 245(l) of the INA, 8 U.S.C. §§ 1101(a)(15)(T), 1184(n) and 1255(l).

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
No. C 07-1307 PJH                 3

1   2000 ("VTVPA") Policy Memorandum #2 - "T" and "U" Nonimmigrant Visas (2001 Guidance);

2   Exhibit C, October 8, 2003 Memorandum from William R. Yates to Director, Vermont Service

3   Center re: Centralization for Interim Relief for U Nonimmigrant Status Applicants (2003 Guidance).

4   This guidance, which has been publicly released, and which is still in effect while the agency awaits

5   the publication of the interim final regulation, requires USCIS personnel to identify possible "U"

6   victims, and to use available mechanisms such as parole, deferred action, continuances, and stays of

7   removal to ensure that no potential "U" victims are removed from the country.  <u>See</u> 2001

8   Memorandum at 4 (Ex. B).  Similar to future recipients of U visas, potential "U" victims who

9   establish prima facie eligibility for U nonimmigrant status and who are placed in deferred action,

10  who are paroled, or who are granted stays of removal, may be granted work authorization enabling

11  these victims to work in the United States.  <u>Id.</u>; <u>see also</u> 8 C.F.R. §§ 274a.12(c)(11), (14), (18).

12      To date, the former INS has received approximately 8,919 requests from aliens who believe

13  they merit a U visa based on harm they experienced as victims of crime and/or other qualifying

14  criteria.  <u>See</u> Exhibit D, Declaration of Michelle Young ("Young decl.") at ¶ 3.  Although no official

15  application form is currently in effect,[4/]  in accordance with the August 30, 2001 and October 8, 2003

16  guidance memos, aliens who believe they qualify for U visas may submit correspondence along with

17  evidentiary proof that addresses the four criteria listed in Section 101(a)(15)(U)(i)(I-IV) of the

18  Immigration and Nationality Act (INA); 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV).  <u>Id.</u> at ¶ 4A.  If the

19  requestor does not submit sufficient information to establish prima facie eligibility, or is otherwise

20  determined to be ineligible for interim relief, the requestor receives a letter indicating the specific

21

22      [4/]A draft of the form that the agency intends to use as an official application form has been
23  provided to the public for notice and comment, and its approval awaits publication of the U visa
    regulations.  On December 5, 2005, USCIS published in the Federal Register a "60-day Notice of
24  Information Collection Under Review; Application for Immediate Family Member of U-1 Recipient;
    and U Nonimmigrant Status Certification; Forms I-918; I-918 Supplement A; and I-918 Supplement
25  B.  <u>See</u> 70 Fed. Reg. 72460 (Dec. 5, 2005).  Following revisions based on public comments USCIS
    published in the Federal Register a "30-day Notice of Information Collection Under Review;
26  Application for Immediate Family Member of U-1 Recipient; and U Nonimmgrant Status
    Certification; Forms I-918; I-918 Supplement A; and I-918 Supplement B.  <u>See</u> 71 Fed. Reg.
27  7132117 (June 2, 2006).

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH                                    4

1    reason(s) that the agency could not grant interim relief. Id. at ¶ 5.

2         Currently, all requests for U nonimmigrant status or interim relief in the form of deferred

3    action are adjudicated by the "VAWA" unit at the Vermont Service Center of the USCIS in St.

4    Albans, Vermont. Id. at ¶ 6.  A team of six adjudicators and two supervisory adjudicators reviews

5    the requests. Id. Of the 8,919 aliens who have requested U visa status, approximately 7,494 have

6    been granted interim relief in the form of deferred action, and approximately 630 cases are pending

7    review. Id. at ¶ 7. The current average processing time from the receipt of the request, to the grant

8    or denial of deferred action is approximately three to four months. Id. Once regulations are

9    published, the agency adjudicators will be in a position to review which recipients of interim relief,

10   and which new U visa applicants are eligible for U visas. Id. at ¶ 8.

11        On January 6, 2006, USCIS issued further guidance to the field. See Exhibit D, January 6,

12   2006 Memorandum from Michael Aytes to Director, Vermont Service Center re: Application for U

13   Nonimmigrant Status ("2006 Guidance").  That guidance indicates that, when the agency begins

14   adjudicating applications for U nonimmigrant status applicants, applicants who were granted interim

15   relief and whose applications for U nonimmigrant status subsequently are approved, will have their

16   U nonimmigrant status recorded as of the date the request for U interim relief was approved. Id.

17        On April 11, 2007, DHS sent an interim final rule to the OMB entitled, "New Classification

18   for Victims Of Certain Criminal Activity; Eligibility for the U Nonimmigrant Status," for approval

19   for publication in the Federal Register. See Exhibit A, OMB-OIRA, Executive Order Submissions

20   Under Review as of May 29, 2007.

21        Facts regarding the individual applicants are contained the Declaration of Michelle Young

22   (Ex. D).  Where facts are relevant to the arguments herein, the facts will be discussed in the text and

23   citation will be to the supporting Young Declaration.

24                                    **III. ARGUMENT**

25        This Court should dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and

26   12(b)(6).  Plaintiffs have the burden of establishing the jurisdiction of this Court. See Stock West,

27

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                    5

1   Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989) (noting that a federal court is

2   presumed to lack subject matter jurisdiction until the contrary affirmatively appears). Even where a

3   plaintiff's pleadings are technically sufficient to establish some basis of jurisdiction, a Rule 12(b)(1)

4   motion may allege that there is an actual lack of jurisdiction. See, e.g., Thornhill Publ'g Co. v. Gen.

5   Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177

6   (9th Cir. 1987). Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate if plaintiffs

7   fail to provide "'grounds' of [their] 'entitle[ment] to relief,'" more than mere labels, conclusions, or

8   formulaic recitations of the elements of causes of action. Bell Atlantic Corp. v. Twombly, -- S.Ct.

9   ----, 2007 WL 1461066, *8 (U.S. S.Ct. May 21, 2007).

10  **A. Plaintiffs do not have Standing.**

11          To establish standing, plaintiffs must do more than allege violations; they must show that

12  they were injured as a result, and that they are "within the 'zone of interests' sought to be protected

13  by the statutory provision that forms the legal basis for [the] complaint." INS v. Legalization

14  Assistance Project of the Los Angeles County Federation of Labor, 510 U.S. 1301, 1305-06 (1993)

15  (O'Connor, Circuit Justice) (INS v. Legalization Assistance Project), citing Lujan v. National

16  Wildlife Federation, 497 U.S. 871, 883 (1990); see also City of Los Angeles v. Lyons, 461 U.S. 95,

17  111 (1983) ("a federal court may not entertain a claim by any or all citizens who no more than assert

18  that certain practices of law enforcement officers are unconstitutional."); Lewis v. Casey, 518 U.S.

19  343, 349 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions,

20  who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the

21  political branches, to shape the institutions of government in such fashion as to comply with the laws

22  and the Constitution.").

23          When determining whether the parties have shown injury resulting from defendants' alleged

24  violations, courts look to whether the injury in fact is "an invasion of a legally protected interest

25  which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."

26  See Quest Corp. v. City of Surprise, 434 F.3d 1176, 1180 (9th Cir. 2006) citing Lujan, 504 U.S. at

27

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH                              6

560 (1992).  In <u>Lewis</u>, the Supreme Court found that plaintiffs (prisoners in a correctional facility) lacked standing to bring claims that they suffered a constitutional violation because they were denied access to the courts as a result of the prison's shortcomings in its legal library and legal assistance program.  <u>Id.</u> at 351.  The Court found that to gain standing, the plaintiffs had to show how they were harmed as a result of the constitutional violation.  <u>Id.</u>  Like the plaintiffs in <u>Lewis</u>, the plaintiffs in this case are merely alleging constitutional and statutory violations without showing injury in fact.

When determining whether plaintiffs satisfy the "zone of interests," courts look to whether the "interest sought to be protected by the complainant is arguably within the zone of interests to be protected . . . by the statute." <u>Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.</u>, 522 U.S. 479, 492 (1998), quoting <u>Ass'n of Data Processing Serv. Orgs. v. Camp</u>, 397 U.S. 150, 153 (1970).

**1.  The Organizational Plaintiffs Should be Dismissed Because They Lack Standing.**

Here, the named plaintiffs include a number of organizations.  None of these organizations, however, is within the zone of interests the U Visa legislation seeks to protect, and none appears to have incurred an injury in fact.  As occurred in, <u>INS v. Legalization Assistance Project</u>, the present statutory scheme indicates no intent to address the interests of organizational plaintiffs, and the present organizational plaintiffs similarly claim that defendants' alleged violations have negatively impacted the organizations' allocation of resources.  <u>See</u> Complaint ¶¶ 6-13.  This is not sufficient to confer standing.  <u>See</u> <u>INS v. Legalization Assistance Project</u>, 510 U.S. at 1305-06.  Therefore, this Court should hold that the organizational plaintiffs are not within the "zone of interests" the U visa statute was designed to protect, and the organizational plaintiffs lack standing.  <u>Id.</u>

Additionally, a majority of the named organizational plaintiffs also lack the requisite injury in fact.  Courts have stated that the necessary injury must be "actual or imminent, not 'conjectural' or 'hypothetical.'" <u>See</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 95 (1983).  Here, seven of the eight organizational plaintiffs fail to allege that they ever had clients who applied for U visas or interim relief.  <u>See</u> Complaint at ¶¶ 6, 9-13.  Only Hermandad Mexicana Nacional (HMN) actually alleges that it ever had members or clients who are eligible for, and who have applied for interim U visa

DEFENDANTS' NOTICE AND MOTION TO DISMISS
No. C 07-1307 PJH                                    7

1    relief.  See Complaint at ¶ 10.  Six of the remaining organizations only allege that the unavailability

2    U visas hypothetically requires them "to assist clients to apply for two benefits instead of one:

3    deferred action and, when and if implementing regulations are promulgated, U Visas"; however,

4    none alleges that they actually have assisted clients to apply for one or both.  Complaint at ¶¶ 6-9,

5    11-12.  The final organization asserts that it has clients who are statutorily ineligible to seek U visa

6    relief in any form, but fails to allege that their alleged clients have applied for relief and been denied.

7    Id. at ¶ 13 (asserting clients who are immigrant parents of U.S. citizen children who are victims of

8    crime and who have cooperated with law enforcement in the investigation and prosecution of certain

9    crimes).  Therefore, even were the court to find the organizational plaintiffs within the statute's zone

10   of interests, this Court should find that seven out of eight organizational plaintiffs lack the requisite

11   injury in fact.

12          HMN is the one organizational plaintiff that the Court might find suffered some injury in fact

13   (notwithstanding the assertion that the organization is outside the statute's zone of interests).

14   However, this Court should dismiss HMN as a plaintiff where the organization's nonprofit

15   corporation status is suspended in the State of California.  See Exhibit F, California Secretary of

16   State, Cal. Business Portal, Corporate Information for HMN as of May 25, 2007; Exhibit G,

17   California Secretary of State, Cal. Business Portal, Corporate Information for HMN Legal Center as

18   of May 25, 2007.  A corporation may not prosecute or defend an action during a period which that

19   corporation is suspended for a failure to pay taxes.  See Grell v. Laci Le Beau Corp., 73 Cal.App. 4th

20   1300, 1306 (1st Dist. 1999), citing Reed v. Norman, 309 P.2d 809 (1957).

21          **2.  The Individual Plaintiffs Should Be Dismissed Because They Lack Standing.**

22          The Court lacks jurisdiction to consider the individual plaintiffs' claims because they have

23   neither alleged, nor suffered, harm as a result of defendants' actions.  Plaintiffs are unable to show

24   that they were injured as a result of USCIS's not yet promulgating regulations, or adjudicating and

25   issuing U visas.  Plaintiffs wrongfully allege in their Complaint that these plaintiffs have suffered

26   "irreparable injury" as a result.  See Complaint at ¶ 65.  The facts indicate that plaintiffs have

27

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                              8

1   suffered no injuries, and thus, there is no case or controversy which provides standing in this matter.

2   Plaintiffs without standing should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

3        All nineteen individual plaintiffs have requested the alternate relief of deferred action, and

4   USCIS has granted all but two plaintiffs the interim relief requested.  See Young Decl. at ¶ 10.  Of

5   those two, one remaining plaintiff has received alternative relief as a self-petitioner under VAWA

6   and has been granted employment authorization pursuant to a pending application for adjustment of

7   status.  See id. at ¶ 19.  The other plaintiff's application for interim relief is pending adjudication.

8   See id. at ¶ 28.

9        The primary harms asserted by plaintiffs are that they are denied rights provided for in the

10  VTVPA, including the "right to be employed, to travel abroad, to be referred for social and related

11  services, [ ] to accrue time toward eligibility for lawful permanent residence," and the right of

12  derivative status for certain members of plaintiffs' immediate families.  Complaint at ¶¶ 41-42.

13  Plaintiffs' characterization, however, is misguided.  As recipients of the interim relief of deferred

14  action (including the three named derivative applicants), and recipients of other forms of relief

15  (VAWA), plaintiffs enjoy the right to work authorization in the United States and other rights and

16  entitlements that future recipients of U visa status will also enjoy.

17       One of the "rights" or ancillary benefits plaintiffs allege U visa recipients have, which

18  recipient of deferred action do not, is the right to be employed.  See Complaint at ¶ 41.  Plaintiffs

19  imply that recipients of deferred action, as a general rule, are not permitted to be employed.  Id.  This

20  is incorrect.  All of the individual plaintiffs are eligible for the benefit of employment authorization,

21  and all but two individual plaintiffs are presently authorized to work.  See Young Decl. at ¶ 10.  Only

22  one of the seventeen plaintiffs granted deferred action lacks employment authorization, and she has

23  failed to apply for the benefit.  Id. at ¶ 26.  The remaining plaintiff who lacks employment

24  authorization may be eligible to receive employment authorization pursuant to a grant of

25  humanitarian parole after following proper application procedures, or on the basis of his application

26  for interim relief which is currently being adjudicated.  Id. at ¶ 28.  Even where, as a result of the

27

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH                    9

1    application of USCIS policy, plaintiffs allege that certain persons may have been delayed

2    employment authorization pending USCIS approval of their interim relief of deferred action, see

3    Complaint at ¶ 44, the fact that all plaintiffs are eligible for employment authorization, and only one

4    plaintiff presently lacks employment authorization, precludes this Court from finding injury,

5    especially where the relief plaintiff seeks is injunctive or declaratory.

6        The next "rights" or ancillary benefits plaintiffs allege U visa recipients receive, which

7    deferred action recipients do not, is the right to travel abroad.  See Complaint at ¶ 41.  Plaintiffs

8    imply that recipients of deferred action, as a general rule, are not permitted to travel abroad.  Id.  This

9    too is incorrect.  In fact, while it is rare that deferred action recipients request authorization to travel

10   abroad, USCIS will, on occasion, permit them to travel abroad upon request.  See Young Decl. at ¶

11   9.  Furthermore, there is no indication that any of the named plaintiffs in this case ever requested

12   authorization to travel abroad, making any such injury hypothetical.

13       Another of the "rights," or ancillary benefits that plaintiffs allege U visa recipients would

14   have, which deferred action recipients do not, is the right of derivative status for certain members of

15   plaintiffs' immediate families.  See Complaint ¶ 42.  Plaintiffs allege that defendants' failure to issue

16   U visas has resulted in the denial, or *will* result in the denial of derivative U visas to eligible persons

17   because defendants permitted such individuals to "age out" of eligibility, or become ineligible for

18   derivative status after reaching twenty-one years of age.  Id.  The complaint names only two

19   derivatives, Sergio Bucio Perez and Andres Bucio Perez, who have the potential of aging out;

20   however, both have received interim relief of deferred action, see Complaint ¶¶ 16, 48, and do not

21   even allege that they risk aging out of U visa eligibility.[5/]

22       Yet another of the "rights," or ancillary benefits plaintiffs allege U visa recipients have,

23   which deferred action recipients do not, is the ability to "accrue time toward eligibility for lawful

24   permanent residence."  See Complaint at ¶ 41.  Plaintiffs imply that their three years accrual time

25

26       [5/]Other plaintiffs allege that their children are in danger of aging out as derivatives; however,
27   none of the potential derivatives are named in the Complaint.

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                          10

1    prior to applying for lawful permanent residence status is being delayed by the USCIS's policy of not

2    issuing U visas until such time as the regulations implementing the U visa provisions are in place.

3    However, this claim is unsupported.  Out of the nineteen named plaintiffs, only two allege that their

4    inability to adjust status will be impaired by the fact that USCIS has not promulgated U visa

5    regulations and is unable to issue U visas.   See Complaint at ¶¶ 49-50.  Those two that allege

6    impairment are nonetheless not presently eligible to adjust status.  See Young Decl. at ¶¶ 13-14.

7    Furthermore, USCIS has provided guidance to U visa adjudicators to ensure that aliens will not be

8    harmed as a result of any delay in adjudicating U visa applications.  See 2006 Guidance (Ex. E).

9    This guidance provides that U nonimmigrant status applicants who are granted interim relief and

10   whose applications for U nonimmigrant status are subsequently granted will have their U

11   nonimmigrant status recorded as of the date the request for U interim relief was approved.  Id.  Thus,

12   recipients of interim relief who are later approved for a U visa will be eligible to apply for

13   adjustment of status three years from the date they received interim relief (and not from the date that

14   their U visa applications were approved).  Id.

15          Plaintiffs also allege that another of the "rights," or ancillary benefits is the opportunity to be

16   referred to Non-Governmental Organizations (NGOs).  See Complaint at ¶ 45.  Despite plaintiffs'

17   claim, no single plaintiff has alleged that they have not received referrals to NGOs.  Plaintiffs

18   additionally fail to demonstrate that they have incurred any injury because of defendants' alleged

19   failure to provide such referrals.  In fact, the large number of organizational plaintiffs party to the

20   complaint indicate that, despite defendants' alleged failure to provide such references, potential U

21   visa applicants are already being counseled by NGOs.  Furthermore pursuant to 2001 guidance,

22   USCIS affords victims who fall into the statutory definition of victim found in the *Attorney General*

23   *Guidelines for Victim and Witness Assistance*, "all the rights contained in that directive."  See 2001

24   Guidance at 5 (Ex. B).

25          Plaintiffs further allege that defendants "deny deferred action to individuals who seek such

26   relief based on asserted eligibility for U visas whenever they do not furnish a [law enforcement]

27

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                                11

certification within six months," Complaint at ¶ 47, and that defendants improperly reject or deny

applications unaccompanied by U certifications."  Complaint at ¶ 81.  Despite plaintiffs' claims, no

single plaintiff has alleged a harm incurred because of defendants' policies regarding law

enforcement attestations.  The one individual plaintiff who had a law enforcement attestation

rejected because it was older than six months subsequently filed an updated law enforcement

attestation, and USCIS granted her interim relief in the form of deferred action.  See id. at ¶ 26;

Young Decl. at ¶ 28.  Four additional plaintiffs initially had their applications for U visas or interim

relief rejected because they altogether lacked, or filed incomplete, law enforcement attestations.  See

Young Decl. at ¶¶ 18-19, 24, 28.  Of those four plaintiffs, Saavedra was granted relief under VAWA,

and no longer requires a U visa or interim relief in the form of deferred action, SanVicente and Perez

were granted interim relief in the form of deferred action after they filed valid law enforcement

attestations, and the interim relief application of Dominguez Rivera is presently being adjudicated on

the basis of a recently received attestation from a local prosecutor.  Id.

Furthermore, the statute specifically requires that U visa petitions, "contain a certification

from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or

local authority investigating criminal activity. . . ."  INA § 214(p)(1).  In addition, this Court should

give deference to USCIS's interpretation of its own statute and subsequent requirement that law

enforcement attestations be dated no earlier than six months prior to a person's application for U visa

or interim relief.  See Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 543 (1978)

(emphasizing that an administrative agency "should be free to fashion [its] own rules of procedure

and to pursue methods of inquiry capable of permitting [it] to discharge [its] multitudinous duties).

Lastly, plaintiffs allege that the INA operates to unconstitutionally "deny U visa eligibility to

the immigrant parents of United States citizen children who are the victims of crimes and who or

whose parents cooperated with law enforcement agencies in the investigation or prosecution of such

crimes," while granting such derivative benefit to immigrant parents with undocumented and lawful

permanent resident children.  See Complaint at ¶ 83.  Despite plaintiffs' claim, no single plaintiff has

DEFENDANTS' NOTICE AND MOTION TO DISMISS
No. C 07-1307 PJH                                        12

1   alleged that he or she is immigrant parent of a United States citizen child who was the victim of

2   crime and who, or whose parents, cooperated with law enforcement agencies in the investigation of

3   the crime.

4                                           *   *   *

5          Accordingly, the Court should dismiss, for lack of standing, the claims of all individual

6   plaintiffs who merely allege constitutional and statutory violations without showing injury in fact.

7   See 518 U.S. at 349.

8   **B. Plaintiffs Lack a Private Right of Action**.

9          Plaintiffs' Causes of Action pursuant to the INA, VTVPA, and VAWA 2005, should also be

10  dismissed because plaintiffs have no private right of action under these acts.  Plaintiffs have failed to

11  meet their burden of establishing that a private right of action exists.  Suter v. Artist M., 503 U.S.

12  347, 363 (1992).  Furthermore, there is nothing in the statutes or legislative history to allow potential

13  U visa applicants a private right of action.  See Opera Plaza Residential Parcel Homeowners

14  Association v. Hoang, 376 F.3d 831, 836 (9th Cir. 2004), citing First Pacific Bancorp, Inc. v. Helfer,

15  224 F.3d 1117, 1121 (9th Cir. 2000).  Therefore, this Court should dismiss these causes of action

16  with regard to all but plaintiffs' Fifth and Ninth Causes of Action, which do not rely on acts

17  discussed above.

18  **C. Plaintiffs Have no Right of Action Under Article II, Sections 1 and 3 of the Constitution**.

19         Plaintiffs incorporate into their causes of action the suggestion that courts may determine

20  whether the President of the United States and the Executive Branch have "take[n] Care that the

21  Laws be faithfully executed."  U.S. Const. Art. II § 3.  However, the Supreme Court has determined

22  that "courts must stay within their constitutionally prescribed sphere of action, whether or not

23  exceeding that sphere will harm one of the other two branches."  See Steel Company v. Citizens for a

24  Better Environment, 523 U.S. 83, 102 n.4 (1988); see also United States v. Navarro-Vargas, 408

25  F.3d 1184, 1206 (9th Cir. 2005) (recognizing that the only true check on Presidential powers in this

26  context is through political pressure).  Furthermore, the Court need not interpret a right of action

27

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH                              13

1   pursuant to Article II of the Constitution where Congress, via the APA, allows for limited review of

2   administrative action for "person[s] suffering legal wrong[s] because of agency action" or by

3   "persons adversely affected or aggrieved by agency action within the meaning of a relevant statute."

4   See INS v. Legalization Assistance Project, 510 U.S. at 1305.  Therefore, this Court should dismiss

5   the part of plaintiffs' First, Second, Third, Fourth, and Six Causes of Action that relies on Article II,

6   §§ 2 and 3 of the United States Constitution.

7   **D.  The Court Lacks Jurisdiction to Consider Plaintiffs' Claim that Defendants Have Failed
       To Promulgate Regulations.**

8

9        Were the Court to find standing, the Court should find that the present controversy is not

10  amenable to resolution under the Administrative Procedures Act ("APA").

11       **1.  Plaintiffs Cannot Seek Judicial Review For Unreasonable Delay Under The APA
            Where Defendants' Actions Are Not Legally Required.**

12       Where an agency has no statutory duty to take an action, a claim for unreasonable delay

13  cannot survive.  See Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004) ("SUWA");

14  W. Watersheds Project v. Matejko, 468 F.3d 1099, 1110 (9th Cir. 2006) (holding that "a 'failure to

15  regulate' claim must be based upon a clearly imposed duty to take some discrete action.").  In

16  SUWA, the Supreme Court held that examined, among other things, the "limits the APA places on

17  judicial review of agency inaction."  SUWA, 524 U.S. at 61.  Discussing 5 U.S.C. § 706(1), the

18  Court held that "the only agency action that can be compelled under the APA is action legally

19  required."  Id. at 63 (emphasis in original).  The Court also specifically noted that "a delay cannot be

20  unreasonable with respect to action that is not required."  Id. at 64, n.1; see also San Francisco

21  Baykeeper v. Whitman, 297 F.3d at 885-86 (finding there could be no "unreasonable delay" under

22  the APA where EPA did not have a present statutory duty to act).

23       USCIS was not required to promulgate regulations by July 4, 2006; rather, Congress directed

24  USCIS to do so, but provided no consequence for failing to do so.  No statutory duty exists to abide

25  by a statutory deadline where Congress does not provide a consequence for failing to abide by that

26  deadline.  See Brock v. Pierce County, 476 U.S. 254, 260-62 (1986); Gottlieb v. Pena, 41 F.3d 730,

27

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH                              14

733 (D.C. Cir. 1994) ("[W]here Congress has placed an agency under a legal obligation to render a

decision within a stated time period but has not set forth the consequences of exceeding that period,

ordinarily the time period is directory rather than mandatory . . . ."); <u>Liesegang v. Secretary of</u>

<u>Veterans Affairs</u>, 312 F.3d 1368, 1377 (Fed. Cir. 2002), citing <u>In re Siggers</u>, 132 F.3d 333, 336 (6th

Cir. 1997) ("The law is well-established in this and other jurisdictions that '[a] statutory time period

is not mandatory unless it both expressly requires an agency or public official to act within a

particular time period <u>and</u> specifies a consequence for failure to comply with the provision.'")

(emphasis added); <u>Hendrickson v. FDIC</u>, 113 F.3d 98, 101 (7th Cir. 1997) ("Standing alone,

moreover, use of the word 'shall' in connection with a statutory timing requirement has not been

sufficient to overcome the presumption that such a deadline implies no sanction for an agency's

failure to heed it.").  Therefore, where Congress stated that regulations implementing U visa

legislation should be promulgated "no later than 180 days after the date of enactment of the [VAWA

2005]," but provided no consequence for DHS's failure to do so, plaintiffs' claim for unreasonable

delay cannot survive.

  In <u>Brock</u>, the Supreme Court found that a requirement that the Secretary of Labor begin an

investigation within 120 days of receiving information about the misuse of federal funds did not

divest the Secretary of authority to investigate a claim after the time limit had passed because, "the

statute did not specify a consequence for a failure to comply with the timing provision."  476 U.S. at

258-262.  Similarly, the Supreme Court in <u>United States v. Montalvo-Murillo</u>, 495 U.S. 711 (1990),

held that a failure to have an immediate hearing upon a pretrial detainee's first appearance before the

judicial officer, pursuant to the Bail Reform Act of 1984 could not be required absent "some

corollary punitive sanction for departures or omissions, even if negligent."  495 U.S. at 716-717; <u>see</u>

<u>also</u> <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 64 (1993).  However, in

<u>Biodiversity Legal Foundation v. Badgley</u>, 309 F.3d 1166 (9th Cir. 2004), the Ninth Circuit found a

statutory deadline mandatory despite a lack of consequence of punitive sanction.  There, the court

found that the only way to interpret two related statutory deadlines was to find that they were

1    mandatory deadlines.  Id. at 1175-1176.

2         In the present case, however, other than the "shall" language in the statute,[6/] there is no

3    alternative basis in the statute or in the legislative history that would allow this court to find the

4    statutory provision in question is mandatory.  Rather, as was the case in Brock and Montalvo-

5    Murillo, the present statute's failure to state a consequence for failing to comply with the 180-day

6    timing provision mitigates against this Court's interpreting that provision as mandatory.

7    Additionally, any serious impairment of plaintiffs' private interests in the promulgation of

8    regulations has been mitigated by USCIS's policy that affords interim relief, in the form of deferred

9    action, to prima facie statutory eligible U visa applicants.  See 2001 Guidance (Ex. B); 2003

10   Guidance (Ex. C).

11        **2.  Plaintiffs Cannot Seek Judicial Review For Arbitrary and Capricious Action Under
          The APA Because Defendants' Actions are not "Final Agency Actions."**

12        In order for an action to be "arbitrary and capricious" pursuant to the APA, there must be

13   final agency action. The APA, by its terms, provides a right to judicial review of all "final agency

14   actions for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  In order for an

15   action to be final, and thus reviewable pursuant to the APA, the action must 1) "mark the

16   'consummation' of the agency's decision-making process," and 2) the action "must be one by which

17   'rights or obligations have been determined,' or from which 'legal consequences will flow.'"

18   Bennett v. Spear, 520 U.S. 154, 178 (1997).

19        With regard to the first prong, the question courts ask is whether the agency "has rendered its

20   last word on the matter."  Oregon Natural Desert Ass'n v. U.S. Forest Service, 465 F.3d 977, 984

21   (9th Cir. 2006).  With regard to the promulgation of regulations, and the content of those regulations,

22   the last word or final action is the final publication of those regulations.

23        Such final action is required to maintain a claim pursuant to 5 U.S.C. § 706(2)(a)

24   (a reviewing court shall hold unlawful and set aside agency action that is "arbitrary, capricious, an

25

26        _____
          [6/] The Ninth Circuit has recognized that the use of "shall" is not conclusively mandatory.
27   Sierra Club v. Whitman, 268 F.3d 898, 904 (9th Cir. 2001).

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                         16

1  abuse of discretion, or otherwise not in accordance with law").  In order for an "arbitrary and

2  capricious" analysis to occur, there must be final agency action.  Finality is a jurisdictional

3  requirement.  Id. at 982.

4        Here, there is no final agency action as USCIS has yet to publish a proposed regulation in the

5  Federal Register.  Thus, an "arbitrary and capricious" analysis under Section 706(a)(2) of the APA is

6  inappropriate with regard to the time it as taken USCIS to promulgate regulations, and the

7  prospective content of those regulations.  Therefore, where there is not final agency action nor a

8  mandatory statutory duty to act, this Court should dismiss plaintiffs' First Cause of Action.

9  **E. Plaintiffs' Claims Regarding the Defendants' Alleged Failure to Adjudicate and Issue U Visas, and the Resulting Impact on Eligibility, Derivatives, and Available Benefits are not**

10  **Ripe for Adjudication by this Court.**

11        Plaintiffs allege that defendants refusal to adjudicate U visa applications or issue U visas to

12  principal and derivative applicants, has impacted plaintiffs' right to work and travel, and that

13  defendants have failed to provide plaintiffs with referral to non-governmental organizations.  See

14  Complaint ¶¶ 41, 44, 45.

15        Even where this Court may find that plaintiffs have standing under one or more of the

16  Second, Third, Fourth, or Sixth Causes of Action, each of those causes of action is not yet ripe for

17  judicial review, and this Court should therefore dismiss these Causes of Action.  See, e.g., Cooney v.

18  Edwards, 971 F.2d 345, 346 (9th Cir. 1992) (holding that district court properly dismissed claims

19  that had become moot or unripe); Thomas v. Anchorage Equal Rights Commission, 220 F.3d 1124

20  (9th Cir. 2000) ("the Constitution mandates that prior to our exercise of jurisdiction there exist a

21  constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not

22  hypothetical or abstract'") (citation omitted).  The ripeness analysis must focus on "the facts as they

23  exist today in evaluating whether the controversy . . . is sufficiently concrete to warrant [the Court's]

24  intervention." Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation, 792 F.2d 782,

25  788 (9th Cir. 1986).

26        In INS v. Legalization Assistance Project, Justice O'Connor  found that "the mere existence

27

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
   No. C 07-1307 PJH                                    17

1   of a regulation is not enough to create standing to challenge the regulations' validity – rather, the

2   regulation must actually have been applied to plaintiff." 510 U.S. at 1303.  Here, the Court is asked

3   to review alleged harms, the nature of which cannot be assessed until regulations are actually

4   promulgated and U visas are issued.  Only once regulations are promulgated may USCIS begin to

5   adjudicate and issue U visas, and only once U visas are issued does an individual have a right to

6   work, travel, or receive referrals to NGOs, pursuant to that visa.  See INA § 214(p)(3)(A), (B); 8

7   U.S.C. § 1184(p)(3)(A) (requiring that an individual be a nonimmgrant described in INA §

8   101(a)(15)(u), or a U visa holder, to be statutorily eligible for NGO referrals and employment

9   authorization).  Therefore, until regulations are promulgated and applied to individuals, this Court

10  should find that Plaintiffs' Second, Third, Fourth, and Sixth Causes of Action are not ripe for review.

11  **F.  Plaintiffs' Fifth Cause of Action For "Unlawful Failure to Publish Employment
    Authorization Rule for Notice and Comment," Should Be Dismissed for Failing to State a
12  Claim for which Relief May Be Granted.**

13          Plaintiffs allege that defendants' "failure to publish for notice and comment its rule

14  forbidding plaintiffs and those similarly situated from applying for employment authorization until

15  after they receive deferred action status violates," the APA, the Due Process Clause and equal

16  protection guarantee of the Fifth Amendment to the United States Constitution.  See Complaint at ¶

17  75.  Plaintiffs further allege that USCIS's previous practice of accepting concurrently filed

18  applications for employment authorization documents from U visa interim relief applicants "allowed

19  persons whom defendants granted deferred action status to work lawfully in the United States after a

20  maximum delay of 90 days," citing USCIS's interim work authorization regulation at 8 C.F.R. §

21  274(a)(13)(d).  See Complaint at ¶ 43.  Finally, plaintiffs assert that USCIS's return to requiring a

22  separate filing to apply for an employment authorization document, "delay[s] for an additional

23  several months the time when persons statutorily eligible for U visas are permitted to work lawfully

24  in the United States."  See Complaint at ¶ 44.

25          Contrary to plaintiffs' assertions, the APA does not require administrative agencies to follow

26  notice and comment procedures in all situations.  Rather, 5 U.S.C. § 553(b)(3) specifically exempts

27

28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH                                  18

1    "interpretive rules, general statements of policy, or rules of agency organization, procedure, or

2    practice" from the requirement.  Ninth Circuit jurisprudence defines such interpretive rules as

3    "hortatory and instructional" things which "merely clarify or explain existing law or regulations."

4    Alcaraz v. Block, 746 F.2d 593, 614 (9th Cir. 1984).  Because interpretative rules only "clarify or

5    explain existing law," they are "not subject to the rigors of the APA," and do not require notice and

6    comment.  Gunderson v. Hood, 268 F.3d 1149, 1155 (9th Cir. 2001).

7          Furthermore, agency action that may be inconsistent with prior actions is not considered

8    arbitrary so long as the agency can provide a "reasoned analysis indicating that prior policies and

9    standards are being deliberately changed, not casually ignored."  See Atchison Topeka & Santa Fe

10   Railway v. Wichita Board of Trade, 412 U.S. 800, 808 (1973); see also Motor Vehicle Mfrs. Assn v.

11   State Farm Mut., 463 U.S. 29 (1983) (extending the doctrine and providing that when an agency

12   departs from settled policy by amending or rescinding a rule, it must provide explicit justification for

13   the change).  Courts do not evaluate the rationality of the change according to their own independent

14   judgment, nor do they invalidate such changes; rather, they remand to the agency for further

15   explanation.  See Troy Corp. v. Browner, 120 F.3d 277 (D.C. Cir. 1977); Ohio v. EPA, 997 F.2d

16   1520 (D.C. Cir. 1993).

17         USCIS regulations provide discretionary means for USCIS to grant employment

18   authorization in a number of situations, including to those individuals who have been granted

19   deferred action.  8 C.F.R § 274a.12(c)(14).  The instructions for the process and the U visa guidance

20   in this are interpretative in nature, and do not require notice and comment.  See Alcaraz 746 F.2d at

21   614 ; Gunderson 268 F.3d at 1155.  USCIS policy regarding interim relief in the form of deferred

22   action for U visa applicants has always required separate filings of requests for deferred action and

23   subsequent applications for employment authorization.  See 2003 Guidance (Ex. C).

24         While official USCIS policy never changed, USCIS practice did.  When interim relief

25   applicants began filing employment authorization applications concurrently with their requests for U

26   visas and/or interim relief in the form of deferred action, USCIS accepted numerous such joint

27

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                              19

1    applications, and adjudicated the employment authorization application immediately after a decision

2    was made regarding an applicant's eligibility for deferred action.  See Young Decl. at ¶ 4B.

3    However, when application volume made it difficult for USCIS to adjudicate requests for U visa

4    interim relief in the form of deferred action within 90 days, USCIS returned to its previous practice,

5    and longstanding policy of not accepting concurrently filed applications for employment

6    authorization.  Id.  Furthermore, contrary to plaintiffs' assertions, it is not a common practice to

7    permit applications for other immigration benefits to apply for employment authorization

8    concurrently with their applications for lawful status.[7/]

9           Therefore, because USCIS employment-authorization-application policies interpret existing

10   statutes and regulations and because changes in practice with regard to interim relief beneficiaries are

11   well-reasoned, this Court should dismiss plaintiffs' Fifth Cause of Action.

12   **G.  Plaintiffs' Equal Protection Claims Fail**

13          **1.  Plaintiffs Fail to Demonstrate a Colorable Equal Protection Claim**

14          In order to maintain an equal protection claim, plaintiffs must identify their membership in a

15   classification or group whose rights have been burdened by defendants' discriminatory application of

16   a law, or whose rights are burdened differently than other groups.  See Freeman v. City of Santa Ana,

17   69 F.3d 1180, 1187 (9th Cir. 1995); Christy v. Hodel, 857 F.2d 1324, 1331 (9th Cir. 1988).  An

18   equal protection claim will fail where plaintiffs do not identify their classification or group and have

19   not explained how the law applies to them in a discriminatory manner or how it imposes different

20   burdens on different groups.  See Freeman, 68 F.3d at 1180.  Next, the Court must determine the

21   level of scrutiny with which to review the statute in question.  See id. at 1187.

22          With regard to plaintiffs' first eight causes of action, plaintiffs fail to allege that they are part

23   of a classification or group affected by the discriminatory application of the statute in question.  The

24   Court, therefore, should find that plaintiffs have failed to state an equal protection claim, and

25   ───────────────
     [7/]   Plaintiffs cite 8 C.F.R § 274a.13(a)(2) as an example of concurrent filing, but that section

26   only requires that applicants for employment authorization pursuant to an application for asylum
     must "submit a copy of the underlying application for asylum or withholding of deportation."  8

27   C.F.R § 274a.13(a)(2).

28

1    therefore have failed to state a claim for which relief can be granted with regard to the equal

2    protection portion of plaintiffs' first eight causes of action.  See id.[8/]

3

4    ### 2.  The Unequal Burden of the Statute Alleged In Plaintiffs' Ninth Cause of Action Has A Rational Basis.

5         Even if the Court finds that plaintiffs have standing to bring the Ninth Cause of Action, the

6    burden is on the plaintiffs to negate every imaginable basis for the statute.  Alexander v. Whitman,

7    114 F.3d 1392, 1408 (3d Cir. 1997).  "[D]ecisions made by the Congress or the President in the area

8    of immigration and naturalization" are subject to "a narrow standard of review" that is equivalent to

9    rational basis scrutiny.  Mathews v. Diaz, 426 U.S. 67, 82 (1976); United States v. Lopez-Florez, 63

10   F.3d 1468, 1473-74 (9th Cir. 1995) ("The same principles that animate both the Constitution's grant

11   of plenary control over immigration legislation to Congress and the attendant low level of judicial

12   review of such legislation dictate a similarly low level of review here, where foreign policy interests

13   are strongly implicated").

14        When applying the rational basis test, "[courts] will not overturn such a statute unless the

15   varying treatment of different groups or persons is so unrelated to the achievement of any

16   combination of legitimate purposes that we can only conclude that the legislature's actions were

17   irrational."  Congregation Kol Ami v. Abington Township, 309 F.3d 120, 133 (3d Cir. 2002), citing

18   Vance v. Bradley, 440 U.S. 93, 97 (1979).  Here, where the statutory language acts to exclude the

19   otherwise eligible parents of U.S. citizen child victims, the Court must consider whether the varying

20   treatment provided for in the statute is related to the achievement of a legitimate purpose.  The

21   statute's purpose is to offer alien crime victims a benefit to encourage them to report crimes to law

22   enforcement and to participate in the investigation and prosecution of the perpetrators of these

23   _____

24   [8/]Additionally, even were plaintiffs to establish that they were part of a group burdened by the
     discriminatory application of the statute in question, or treated differently than other groups, such

25   burden will be upheld so long as it withstands rational basis scrutiny.  See Mathews v. Diaz, 426
     U.S. 67, 82 (1976); United States v. Lopez-Flores, 63 F.3d 1468, 1473-74 (9th Cir. 1995) ("The

26   same principles that animate both the Constitution's grant of plenary control over immigration
     legislation to Congress and the attendant low level of judicial review of such legislation dictate a

27   similarly low level of review here, where foreign policy interests are strongly implicated.").

28

1   crimes, VTVPA, P.L 106-386 § 1513(a)(1)(B).  The statute also extends such benefits to alien

2   parents of alien child crime victims, but extends no benefits to alien parents of U.S. citizen crime

3   victims.  See INA § 214(p)(1).  Because the alien parents of alien child crime victims would

4   otherwise be without relief, this statute was necessary to meet the goal of encouraging reporting and

5   participation in prosecution.  However, where other benefits are available to parents of U.S. citizen

6   children, such as being sponsored for citizenship by their children upon reaching the age of twenty-

7   one, or the ability to seek cancellation of removal, there was less of a need to provide an additional

8   benefit.  See INA § 201(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i) (United States citizen children may

9   sponsor their parents for immigrant visas after the children reach twenty-one years of age); INA §

10  240A, 8 U.S.C. 1229b (cancellation of removal).  Thus, where defendants have a rational basis and

11  plaintiffs have failed to negate any imaginable basis for the disparate result of the statute, this Court

12  should dismiss plaintiffs' Ninth Cause of Action.

13  **H.  Plaintiffs Fail to Establish a Protected Due Process Interest in the Promulgation of Regulations, Adjudication of Applications, or Potential Benefits.**

14
15          In order to maintain a due process claim, every plaintiff must show that he has a protected

16  interest.  See Board of Regents v. Roth, 408 U.S. 564, 569 (1972) ("[t]he requirement of procedural

17  due process apply only to the deprivation of interests encompassed by the [Due Process Clause's]

18  protection of liberty and property"); Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998)

19  (due process claimant "must, as a threshold matter, show government deprivation of life, liberty, or

20  property").

21          To have a protectable property or liberty interest in a benefit, "a person clearly must have

22  more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He

23  must, instead, have a legitimate claim of entitlement to it."  Roth, 408 U.S. at 577; Valdez v.

24  Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (If a statute does not "mandate a particular

25  outcome," there is no legitimate claim of entitlement and, hence, no liberty interest); Roberts v.

26  Spaulding, 783 F.2d 867, 870 (9th Cir. 1986) ("A mere expectation of receiving a benefit is not

27  enough to create a protected interest").

28

1      Additionally, the Supreme Court has ruled that the statutory grant of a procedural right

2  cannot itself give rise to a liberty interest.  See Ohio Adult Parole Authority v. Woodard, 523 U.S.

3  272, 280 n.2 (1998); Olim v. Wakinekona, 461 U.S. 238, 250 (1983) (an "expectation of receiving

4  process is not, without more, a liberty interest protected by the Due Process Clause"); FDIC v.

5  Henderson, 940 F.2d 465, 475 (9th Cir. 1991) ("[A] substantive property right cannot exist

6  exclusively by virtue of a procedural right").

7      Here, the statutory language in question can be interpreted, at most, as a procedural right.

8  Ultimately, plaintiffs' eligibility for U visas will be formally assessed following the promulgation of

9  regulations.  With regard to plaintiff's First, Second, and Fourth Causes of Action, the only way to

10 assess whether each plaintiff has a "legitimate claim of entitlement," to a U visa is through the

11 individual adjudication of each plaintiff's claim.  Because the statutes in question do not "mandate a

12 particular outcome," but rather, call for the promulgation of regulations to further explain and define

13 the statute, then plaintiffs cannot legitimately claim entitlement to U visas, and therefore they have

14 no protected interest in the receipt of U visas.  See Valdez, 302 F.3d at 1045.

15      Plaintiffs' complaint similarly fails to establish a due process interest in support of their

16 remaining causes of action.  Requiring the promulgation of regulations before U visas may be

17 adjudicated or issued, and requiring the issuance of a U visa before eligibility for certain benefits

18 may be assessed, does not rise to a due process violation absent a showing that Plaintiff has a

19 protectable interest in a legitimate claim of entitlement to a benefit.  See, e.g., Roberts, 783 F.2d at

20 870 (9th Cir. 1986) ("A mere expectation of receiving a benefit is not enough to create a protected

21 interest"); Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 280 n.2 (1998); Olim, 461 U.S. at

22 250 (1983) (an "expectation of receiving process is not, without more, a liberty interest protected by

23 the Due Process Clause").  Furthermore, a plaintiff's ability to meet the bare statutory requirements

24 for U visa eligibility does not itself create a protected interest in the receipt of that benefit, nor does

25 an agency's reasonable interpretation of its own statute in assessing eligibility for interim relief prior

26 to the promulgation of regulations impinge on a protected interest, especially where such interest

27

28 DEFENDANTS' NOTICE AND MOTION TO DISMISS
   No. C 07-1307 PJH                    23

1    only amounts to the mere expectation in receiving a benefit.  See Roberts, 783 F.2d at 870 (9th Cir.

2    1986); Vermont Yankee, 435 U.S. at 543 (1978).

3           Thus, where plaintiffs cannot show a protected interest in the promulgation of regulations,

4    adjudication of U visa applications, or potential benefits that might follow a U visa grant, this Court

5    should dismiss the Due Process part of all nine of plaintiffs' causes of action.

6    **I.  Even if the Court Finds Some Basis of Jurisdiction, the Court Should Not Grant Plaintiffs'
        Requests for Injunctive or Declaratory Relief.**

7
8           Courts have been reluctant to apply injunctive and declaratory judgment remedies to

9    administrative determinations unless the controversy is ripe for judicial resolution.  Reno v. CSS,

10   509 U.S. 43, 59 (1993), citing Abbott Laboratories v. Gardner, 387 U.S. 136, 148.  To qualify for

11   injunctive relief, the class members must demonstrate that they will sustain irreparable injury and

12   that remedies at law are inadequate.  Walters v. Reno, 143 F.3d 1032, 1048 (9th Cir. 1998), citing

13   Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 558 (9th Cir. 1990).  To qualify for a permanent

14   injunction, "plaintiffs must establish actual success on the merits, and that the balance of equities

15   favors injunctive relief."  Id.; see also Amoco Prod. Co. v. Vill. Of Gambell, Alaska, 480 U.S. 531,

16   542 (1987).

17          Additionally, the public interest is always a factor to be considered in the granting of an

18   injunction.  See Weinberger v. Romero-Barcelo, 456 U.S. 305, 326-27 (1982).  Were the court to

19   find that defendants violated a federal statute, the test for determining if equitable relief is

20   appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the

21   statute.  Biodiversity Legal Foundation, 309 F.3d at 1177, citing TVA v. Hill, 437 U.S. 305 (1982).

22   The Supreme Court has held that a challenge to a regulation that did not immediately impact the day-

23   to-day affairs of those subject to it would not be ripe since, "no irremediably adverse consequences

24   flowed from requiring a later"  Toilet Goods Assn., Inc. v. Gardner, 387 U.S. 158 (1967).

25          Furthermore, to the extent that Plaintiffs claim jurisdiction on the basis of the Declaratory

26   Judgment Act, 28 U.S.C. § 2201, that statute does not provide an independent basis for subject

27   matter jurisdiction; it only creates a particular kind of remedy available in actions where the district

28   DEFENDANTS' NOTICE AND MOTION TO DISMISS
     No. C 07-1307 PJH                                    24

1   court already has jurisdiction to entertain a suit.  See Skelly Oil Co. v. Phillips Petroleum Co., 339

2   U.S. 667, 671-72 (1950); Jarrett v. Roser, 426 F.2d 213, 216 (9th Cir. 1970).  Thus, to be eligible for

3   declaratory relief, plaintiffs must first establish jurisdiction under an independent basis.  See Skelly

4   Oil Co., 339 U.S. at 671-672  As discussed above, plaintiffs have failed to otherwise establish

5   jurisdiction; accordingly, the Declaratory Judgment Act is not applicable.

6          Here, plaintiffs have failed to establish any of the prerequisites for the issuance of a

7   temporary or permanent injunction, as plaintiffs cannot establish actual success on the merits where

8   this court does not have jurisdiction over any of plaintiffs' causes of action.  However, even were

9   this Court to find jurisdiction of any of plaintiffs' causes of action, injunctive and declaratory relief

10  would not be appropriate because plaintiffs' have not suffered irremediably adverse consequences.

11  This Court should refrain from ordering injunctive or declaratory relief where USCIS has acted to

12  mitigate potential harms caused by the time it has taken USCIS to promulgate the regulations in

13  question.  Furthermore, where those regulations are presently in the final stages of review prior to

14  publication in the Federal Register, it would not be judicially efficient to render such a decision now.

15                                    **IV.  CONCLUSION**

16  For the foregoing reasons, defendants respectfully request that the Court dismiss this action.

17
         Dated: May 29,  2007                          Respectfully submitted,
18
                                                       SCOTT N. SCHOOLS,
19                                                     United States Attorney
                                                       ILA C. DEISS
20                                                     Assistant United States Attorney

21                                                     VICTOR M. LAWRENCE
                                                       Senior Litigation Counsel
22
                                                       /s/ Jeffrey S. Robins
23      _____

24                                                     JEFFREY S. ROBINS
                                                       Trial Attorney
25                                                     U.S. Department of Justice
                                                       Civil Division
26                                                     Office of Immigration Litigation
                                                       P.O. Box 878, Ben Franklin Station
27                                                     Washington, D.C. 20044
                                                       (202) 616-1246
28  DEFENDANTS' NOTICE AND MOTION TO DISMISS
    No. C 07-1307 PJH                              25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| CATHOLIC CHARITIES CYO (SAN FRANCISCO), *et al.*, | ) ) ) | No. C 07-1307 PJH |
| Plaintiffs, | ) ) | |
| v. | ) ) | **[PROPOSED] ORDER** |
| MICHAEL CHERTOFF, Secretary, U.S. Department of Homeland Security, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Before the Court is defendants' Motion to Dismiss the plaintiffs' Complaint for Declaratory and Injunctive Relief for lack of jurisdiction in part, and for failure to state a claim in part, and alternatively, to exercise judicial discretion not to order an injunctive or declaratory remedy where the primary source of plaintiffs' Complaint, the promulgation of U visa regulations, is progressing towards completion.

The Court has carefully considered the pleadings of record and:

_____ Grants Defendants' motion to dismiss the Complaint for lack for jurisdiction.

_____ Grants Defendants' motion to dismiss the Complaint for lack for jurisdiction. in part, and for failure to state a claim in part.

_____ Grants Defendants' motion where an award of equitable relief is not judicially efficient at this time.

IT IS SO ORDERED.

San Francisco, California, this _____ day of _____, 2007.


_____

Hon. Phyllis J. Hamilton

United States District Judge