1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CATHOLIC CHARITIES CYO
(SAN FRANCISCO), et al.,

        Plaintiffs,

    v.

MICHAEL CHERTOFF, Secretary,
U.S. Department of Homeland
Security, et al.,

        Defendants.
_____/

No. C 07-1307 PJH

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS**

Now before this court is the motion of the government defendants to dismiss the complaint in its entirety. Peter Schey and Carlos Holguin appeared for plaintiffs; Jeffrey S. Robins and Victor M. Lawrence appeared for defendants. Having read all the papers submitted and carefully considered the relevant legal authority, the government's motion is hereby GRANTED IN PART AND DENIED IN PART for the following reasons and for the reasons stated at the hearing.

**BACKGROUND**

On March 6, 2007, individual and organizational plaintiffs Eleuterio Rodriguez Ruiz, Felipe Sanchez Martinez, Francisca Ramirez Alvarez, Constantina Campos, Irma Moreno Sanvicente, Rosa Galaviz, Maria Luisa Arroyo, Juan Rocha Rocha Francisco, Voces Unidas Project, Jorge Dominguez Rivera, Central American Resource Center, Hermandad Mexicana Nacional, Catholic Charities CYO, Sanctuary for Families, Friendly House,

**United States District Court**
For the Northern District of California

Diocesan Migrant & Refugee Services, Inc. of El Paso, Sergio Bucio Perez, Andres Bucio Perez, Xiomara Castro, Ramona Quintero, Luis R. Nunez Hernandez, Ricardo Nunez Hernandez, Elizabeth Lopez Gomez, International Institute of the East Bay, Maria Estervina Perez, Giovana Saavedra (collectively "plaintiffs") filed a complaint against Michael Chertoff, Secretary of the U.S. Department of Homeland Security ("DHS") and United States Citizenship and Immigration Services, DHS (collectively "defendants").

This is a proposed class action in which plaintiffs seek declaratory and injunctive relief compelling defendants to discharge their statutory duty to permit immigrant crime victims who assist law enforcement officials in the investigation or prosecution of criminal offenders to apply for lawful immigration status.

The complaint alleges that on October 28, 2000, the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Public L. No. 106-386, Div A, 114 Stat. 1464 (2000) was signed into law.  That Act permits immigrants who are victims of serious crimes and who assist law enforcement to apply for and receive "U" visas.  After possessing such a visa for three years, such immigrants may apply for lawful permanent resident status. Complaint ¶ 1.  Yet, despite having six years to do so, defendants have unlawfully failed to implement the program, have failed to promulgate regulations, establish procedures, or publish application forms through which victims may apply for such visas.  Id. ¶ 2.  Instead, defendants have granted some U visa eligible persons a quasi-legal temporary status known as "deferred action" which is no more than an exercise of prosecutorial discretion not to seek a crime victim's immediate deportation or removal and confers no legal status. In contrast, recipients of U visas are entitled, among other benefits, to be employed, to travel abroad, to be referred for social and related services, and to accrue time toward eligibility for lawful permanent residence.  Id. ¶ 41.  Applicants for deferred action must wait until deferred action is granted to seek employment authorization, which adds a delay of a few months to obtaining lawful employment.  Id. ¶ 44.  Plaintiffs also allege that defendants have a policy of denying deferred action to individuals who seek relief based on asserted

United States District Court

For the Northern District of California

1   eligibility for U visas when they do not furnish certification pursuant to 8 USC § 1184(p)(1)

2   (which is certification that the alien has been helpful, is being helpful, or is likely to be

3   helpful in the investigation or prosecution of criminal activity) executed within six months of

4   their requests for deferred action.  Id. ¶ 46-47.

5        The organizational plaintiffs generally provide legal aid to indigent immigrants,

6   including helping them apply for legal status.  They allege that failure to implement the U

7   visa program makes the organization assisting clients apply for two benefits instead of one,

8   as it must assist clients to apply for deferred action and for temporary employment

9   authorization, relief that must be renewed annually through a new application.  Then, the

10  organizations must assist their clients to apply for U visas once regulations are finally

11  promulgated.  This diverts their limited resources and makes their work and achievement of

12  their goals more difficult and costly.  See id. ¶¶ 6-13.  Hermandad Mexicana Nacional

13  ("HMN") also alleges that it has members and clients who are the victims of crime in the

14  United States and who have cooperated with law enforcement agencies, yet are unable to

15  obtain U visas.  Id. ¶ 10.

16       As to the individual plaintiffs, each alleges to be prima facie eligible for a U visa.

17  They all have petitioned defendants to issue them U visas and to promulgate regulations

18  implementing the provision of such visas.  Id. ¶ 14-15.

19       Plaintiffs allege the following causes of action, each of which has numerous statutory

20  and constitutional bases, as follows:

21       (1) failure to promulgate regulations implementing U visa program in violation of the

22  Victims Protection Act of 2000, Pub. L. No. 106-386, Div. A, 114 Stat. 1464 (2000), codified

23  at 8 U.S.C. § 1101(a)(15)(U); the Immigration and Nationality Act, 8 U.S.C. § 1103 ("INA");

24  the Violence Against Women and Department of Justice Reauthorization Act, Pub. L. 109-

25  162, 119 Stat. 2960 (2006) ("VAWA"); the Administrative Procedure Act ("APA"), 5 U.S.C. §

26  551 et seq.; the due process clause and equal protection guarantee of the Fifth

27  Amendment to the United States Constitution; and Article II, §§ 1 and 3 of the United

28

United States District Court
For the Northern District of California

1   States Constitution;

2        (2) refusal to adjudicate U visa applications and issue U visas in violation of those

3   same statutory and constitutional provisions;

4        (3) refusal to adjudicate U visa applications and impact on the right to work and

5   travel in violation of those same statutory and constitutional provisions;

6        (4) failure to adjudicate applications for or issue derivative U visas in violation of

7   those same statutory and constitutional provisions;

8        (5) unlawful failure to publish employment authorization rule for notice and comment

9   in violation of the APA and the due process clause and equal protection guarantee of the

10   Fifth Amendment;

11        (6) failure to provide referrals to nongovernmental organizations in violation of 8

12   U.S.C. § 1184(p)(3)(A); the INA; VAWA; APA; the due process clause and equal protection

13   guarantee of the Fifth Amendment; and Article II, §§ 1 and 3 of the United States

14   Constitution;

15        (7) unlawful rejection of law enforcement certifications in violation of 8 U.S.C

16   1101(u)(i)(III) and 1184(p)(1); and the due process clause and equal protection guarantee

17   of the Fifth Amendment;

18        (8) Unlawful failure to issue U certifications in violation of 8 U.S.C 1101(u)(i)(III) and

19   1184(p)(1); and the due process clause and equal protection guarantee of the Fifth

20   Amendment; and

21        (9) unconstitutional restriction on U visa eligibility in violation of the equal protection

22   guarantee of the Fifth amendment, as 8 U.S.C 1101(u)(i)(III) and 1184(p)(1) operate to

23   deny protection to immigrant parents of US citizen children who are victims of crime and

24   whose parents cooperated with law enforcement, while granting such benefit to the

25   immigrant parents of undocumented and lawful permanent resident children.  Complaint ¶¶

26   66-83.  Plaintiffs seek declaratory relief, preliminary and permanent injunctions, and costs

27   of suit and attorneys' fees.  <u>See</u> Prayer for Relief.

28

4

The government now moves to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6).  The government moves on the following grounds with respect to the following causes of action.

First, they move to dismiss all plaintiffs – organizational and individual plaintiffs – on the grounds that they lack standing (all causes of action).

Second, defendants move to dismiss all portions of plaintiffs' causes of action pursuant to the INA, VTVPA, and VAWA 2005 on the grounds that they do not have a private right of action under these actions (first through fourth and seventh and eighth causes of action).

Third, defendants move to dismiss all portions of plaintiffs' causes of action under Article II, Sections 1 and 3 of the Constitution, on the grounds that plaintiffs have no right of action under these provisions (first through fourth and sixth causes of action insofar as they rely on these provisions).

Fourth, defendants argue that the court lacks jurisdiction to consider plaintiffs' claim that defendants have failed to promulgate regulations, because plaintiffs cannot seek judicial review for unreasonable delay under the APA where defendants' actions are not legally required, and because defendants' actions are not final agency actions under the APA (first and fourth causes of action).

Fifth, defendants argue that plaintiffs' claims regarding the defendants' alleged failure to adjudicate and issue U visas and the resulting impacts on eligibility, derivatives, and available benefits are not yet ripe for adjudication (second through fourth and sixth causes of actions).

Sixth, defendants argue that plaintiffs' fifth cause of action for unlawful failure to publish employment authorization rule for notice and comment should be dismissed for failure to state a claim (fifth cause of action).

Seventh, defendants argue that plaintiffs fail to allege a colorable equal protection claim because they fail to allege they are part of a classification or group and because the

5

United States District Court

For the Northern District of California

1  portion of the statute at issue in the last cause of action has a rational basis (equal

2  protection portion of all causes of action).

3      Eighth, defendants argue that plaintiffs fail to allege a protected due process interest

4  in the promulgation of regulations, adjudication of applications, or potential benefits (due

5  process portion of all causes of action).

6      Ninth, defendants argue that even if there is basis for jurisdiction, the court should

7  not grant plaintiffs' requests for injunctive or declaratory relief (refrain from entering relief on

8  all causes of action).

9                              **DISCUSSION**

10     A.    Legal Standard

11     1.    Rule 12(b)(1)

12     Under Rule 12(b)(1), plaintiff bears the burden of establishing subject matter

13 jurisdiction.  In effect, the court presumes lack of jurisdiction until the plaintiff proves

14 otherwise.  See Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873

15 F.2d 1221, 1225 (9th Cir. 1989).  A Rule 12(b)(1) jurisdictional attack may be facial or

16 factual.  In a facial attack, the challenger asserts that the allegations contained in a

17 complaint are insufficient on their face to invoke federal jurisdiction.  In a facial attack, the

18 court must consider allegations of the complaint as true.  By contrast, in a factual attack,

19 the challenger disputes the truth of the allegations that, by themselves, would otherwise

20 invoke federal jurisdiction.  In resolving a factual attack on jurisdiction, the district court may

21 review evidence beyond the complaint without converting the motion to dismiss into a

22 motion for summary judgment.  The court then determines the facts for itself.  See Safe Air

23 v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

24     2.    Rule 12(b)(6)

25     A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

26 alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

27 Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

28

United States District Court

For the Northern District of California

1  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for

2  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

3  requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) requires only that the

4  complaint include a "short and plain statement of the claim showing that the pleader is

5  entitled to relief."  Fed. R. Civ. P. 8(a)(2).

6      Specific facts are unnecessary – the statement need only give the defendant "fair

7  notice of the claim and the grounds upon which it rests."  Erickson v. Pardus, 127 S.Ct.

8  2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)).

9  All allegations of material fact are taken as true.  Erickson, 127 S.Ct. at 2200.  However, a

10 plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than

11 labels and conclusions, and a formulaic recitation of the elements of a cause of action will

12 not do."  Bell Atlantic, 127 S.Ct. at 1964-65 (citations and quotations omitted).  Rather, the

13 allegations in the complaint "must be enough to raise a right to relief above the speculative

14 level."  Id. at 1965.  A motion to dismiss should be granted if the complaint does not proffer

15 enough facts to state a claim for relief that is plausible on its face.  See id. at 1966-67.

16      B.    Statutory Background

17      Congress created the "U" nonimmigrant classification ("U visa") for qualifying victims

18 of certain criminal activity with the enactment of the Victims of Trafficking and Violence

19 Protection Act of 2000 ("VTVPA"), Public L. No. 106-386, Div A, 114 Stat. 1464 (October

20 28, 2000).  According to Congress:

21      The purpose of this section is to create a new nonimmigrant visa
        classification that will strengthen the ability of law enforcement
22      agencies to detect, investigate, and prosecute cases of domestic
        violence, sexual assault, trafficking of aliens, and other crimes
23      described in section 101(a)(15)(U)(iii) of the Immigration and
        Nationality Act committed against aliens, while offering protection
24      to victims of such offenses in keeping with the humanitarian interests
        of the United States. This visa will encourage law enforcement
25      officials to better serve immigrant crime victims and to prosecute
        crimes committed against aliens.
26

27 VTVPA, Pub. L. 106-386 at § 1513(a)(2)(A).

28

                                    7

United States District Court

For the Northern District of California

1   Congress recognized that creating this nonimmigrant visa classification would

2   facilitate the reporting of crimes to law enforcement officials by "trafficked, exploited,

3   victimized, and abused aliens who are not in lawful immigration status" and would give "law

4   enforcement officials a means to regularize the status of cooperating individuals during

5   investigations or prosecutions."  Id. at § 1513(a)(2)(B).   Providing temporary legal status to

6   victimized aliens also "comports with the humanitarian interests of the United States."  Id.

7   Congress also gave the Attorney General discretion to convert the status of such

8   individuals to that of permanent residents when doing so "is justified on humanitarian

9   grounds, for family unity, or is otherwise in the public interest."  Id. at § 1513(a)(2)(C).

10   Creating the U visa provision was a small component of a much larger Act.  The

11   VTVPA[1] has three divisions: The Trafficking Victims Protection Act of 2000; the Violence

12   Against Women Act of 2000; and a division with Miscellaneous Provisions.  Section 1513

13   discussed above is part of the Violence Against Women Act of 2000.

14   In addition to the U visa, Congress created a "continued presence" provision

15   permitting the Secretary of Homeland Security to ensure the continued presence of

16   trafficking victims who are potential witnesses in a criminal investigation prosecution.

17   Congress directed the promulgation of regulations to implement those provisions within 180

18   days.  See VTVPA, Pub. L. 106-386, § 107(c).

19   However, Congress did not similarly direct the promulgation of regulations of the U

20   visa sections of the VTVPA until Congress passed the Violence Against Women Act of

21   2005 ("VAWA 2005"), which the president signed on January 5, 2006.  See VAWA 2005,

22   Pub. L. 109-162 at § 828, 119 Stat. 2960 (2006) (Directing that "not later than 180 days

23   after the date of enactment . . . the Attorney General, the Secretary of Homeland Security,

24   and the Secretary of State shall promulgate regulations to implement the provisions

25   contained in the Battered Immigrant Women Protection Act of 2000").

26

27   ─────────────────

   [1]   The sections of the VTVPA pertaining to U nonimmigrant status are codified in the
28   Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(a)(15)(U), 1184(p) and 1255(m).

United States District Court

For the Northern District of California

1   There are certain requirements pertaining to U visas, including that: "the Attorney

2   General and other government officials, where appropriate, shall provide those aliens with

3   referrals to nongovernmental organizations to advise the aliens regarding their options

4   while in the United States and the resources available to them; and . . . the Attorney

5   General shall, during the period those aliens are in lawful temporary resident status under

6   that subsection, provide the aliens with employment authorization." 8 U.S.C. § 1184(p)(3).

7   "In acting on any petition filed under this subsection, the consular officer or the Attorney

8   General, as appropriate, shall consider any credible evidence relevant to the petition." §

9   1184(p)(4).

10   The code describing U visa eligibility defines that class of "nonimmigrant aliens" as:

11   (U) (i) subject to section 214(p) [8 USCS § 1184(p)], an alien who
     files a petition for status under this subparagraph, if the Secretary

12   of Homeland Security determines that--
         (I) the alien has suffered substantial physical or mental

13   abuse as a result of having been a victim of criminal activity
     described in clause (iii);

14       (II) the alien (or in the case of an alien child under the age
     of 16, the parent, guardian, or next friend of the alien) possesses

15   information concerning criminal activity described in clause (iii);
         (III) the alien (or in the case of an alien child under the age

16   of 16, the parent, guardian, or next friend of the alien) has been
     helpful, is being helpful, or is likely to be helpful to a Federal, State,

17   or local law enforcement official, to a Federal, State, or local
     prosecutor, to a Federal or State judge, to the Service, or to other

18   Federal, State, or local authorities investigating or prosecuting
     criminal activity described in clause (iii); and

19       (IV) the criminal activity described in clause (iii) violated the
     laws of the United States or occurred in the United States (including

20   in Indian country and military installations) or the territories and
     possessions of the United States;

21       (ii) if accompanying, or following to join, the alien described in
     clause (i)--

22       (I) in the case of an alien described in clause (i) who is
     under 21 years of age, the spouse, children, unmarried siblings

23   under 18 years of age on the date on which such alien applied for
     status under such clause, and parents of such alien; or

24       (II) in the case of an alien described in clause (i) who is 21
     years of age or older, the spouse and children of such alien; and

25       (iii) the criminal activity referred to in this clause is that
     involving one or more of the following or any similar activity in

26   violation of Federal, State, or local criminal law: rape; torture;
     trafficking; incest; domestic violence; sexual assault; abusive sexual

27   contact; prostitution; sexual exploitation; female genital mutilation;
     being held hostage; peonage; involuntary servitude; slave trade;

28

9

United States District Court

For the Northern District of California

1
2
3

kidnapping; abduction; unlawful criminal restraint; false
imprisonment; blackmail; extortion; manslaughter; murder;
felonious assault; witness tampering; obstruction of justice; perjury;
or attempt, conspiracy, or solicitation to commit any of the above
mentioned crimes;

4

8 U.S.C. § 1101(a)(15)(U).

5
6
7

In addition, the Secretary of Homeland Security may adjust the status of an alien U

visa holder to permanent resident after three years of holding a U visa.  8 U.S.C. §

1255(m).

8
9
10
11
12
13
14
15
16

Because regulations were not yet promulgated to implement the U visa, on August

30, 2001 and on October 8, 2003, the Immigration and Naturalization Service and U.S.

Citizenship and Immigration Services issued interim guidance to establish interim

procedures to be followed.  These guidances require United States Citizenship and

Immigration Services ("USCIS") personnel to use mechanisms such as deferred action and

stays of removal to ensure that potential U victims are not removed from the country.  See

Def. Ex. B (8/30/01 Guidance) at 4, Ex. C (10/8/03 Guidance).  The guidances also provide

that such victims may receive work authorization.  Id.

17
18
19
20
21

While there is no formal application for U visas, aliens who believe they qualify for

such visas may submit correspondence in support of a request.  A team of adjudicators in

Vermont reviews the requests.  At least 8,919 aliens have requested U visa status, and

approximately 7,494 have been granted interim relief, and approximately 630 cases are

pending.  See Am. Young Decl. ¶¶ 6-7.

22
23
24
25

On January 6, 2006, USCIS issued further guidance that when the agency begins

adjudicating applications for U visas, applicants who were granted interim relief and whose

U visa applications are subsequently approved will have their U nonimmigrant status

recorded as of the date the request for U interim relief was approved.  See Def. Ex. E

(1/6/06 Guidance).

26
27
28

On April 11, 2007, DHS sent an interim final rule for approval for publication in the

Federal Register.  See Def. Ex. A (GSA printout).  At the hearing, the government

United States District Court

For the Northern District of California

1   represented that the Secretary of the U.S. Department of Homeland Security was expected

2   to sign the proposed regulations on that very day, and that the regulations would then be

3   transmitted to the Federal Register, which would then publish the regulations for notice and

4   comment.

5          C.     Government's Motion to Dismiss

6          The plaintiffs in this case seek two different types of relief.  First, they want the

7   government to promulgate regulations implementing the U visa program.  Second, they

8   want the government to adjudicate U visa applications pursuant to the statutory

9   requirements.  While it appears that some claims may ultimately become moot and others

10  may not be ripe, dismissal is not proper at this time.

11         First, it appears that certain claims will eventually be mooted when the government

12  promulgates regulations, which it is in the process of doing.  The contours of the other

13  causes of action in this complaint, however, are not yet clear and will not be clear until the

14  government adopts regulations implementing the U visa program.  Many claims may very

15  well not be ripe until the content of those regulations is determined.  For example, with

16  regards to plaintiffs' requests that the government adjudicate the applications, the court

17  cannot tell the agency how to adjudicate applications for U visas before the agency

18  implements the applicable regulations.  Nor can the court decide whether the regulations

19  themselves violate any laws until those regulations exist.

20         Plaintiffs, however, have made sufficient allegations regarding their injury, such that

21  dismissal of entire causes of action on this basis is not warranted at this time.  Nor is the

22  government's argument that plaintiffs may not obtain relief under the APA persuasive, as

23  the government has failed to promulgate regulations within the given timeframe.  See, e.g.,

24  Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986) (noting that the APA entitles any

25  person "adversely affected or aggrieved by agency action" to judicial review unless the

26  relevant statute precludes judicial review or "agency action is committed to agency

27  discretion by law", and further noting that the "statutory command that the Secretary shall

28

11

**United States District Court**
For the Northern District of California

1   act within 120 days does not commit such action to the Secretary's discretion" and that a

2   court would have the authority to compel agency action unlawfully withheld or unreasonably

3   delayed).  The court cannot evaluate the "reasonableness of delay" at this early stage in

4   the litigation, as the government has not provided detailed reasons for its delay, and the

5   total amount of delay is still uncertain.

6        However, the portion of plaintiffs' claims based on Article II of the Constitution are

7   dismissed.  United States Const. Art. II, § 3 states that the President "shall take Care that

8   the Laws be faithfully executed."  Article II, § 1 requires the President to take an oath of

9   office that swearing or affirming to "faithfully execute the Office of President of the United

10  States, and will to the best of my Ability, preserve, protect and defend the Constitution of

11  the United States."  While plaintiffs listed these sections of the Constitution in various

12  causes of action, plaintiffs were unable to provide the court with any explanation of the

13  meaning of these claims or any authority for pursuing their claims under this provision of

14  the Constitution.

15       With regards to all other aspects of the causes of action, once regulations are

16  enacted, the court will be able to decide what is left in the case.  While there is no relief the

17  court could order at this point with regards to enacting regulations, as the agency is in the

18  process of promulgating those, the court will revisit this issue if regulations are not issued

19  by January.

20                                **CONCLUSION**

21       Accordingly, the motion to dismiss is GRANTED IN PART AND DENIED IN PART as

22  follows.

23       (1)    The portions of plaintiffs' causes of action based on Article II of the

24              Constitution are DISMISSED;

25       (2)    The rest of the government's motion is DENIED WITHOUT PREJUDICE to

26              refiling when it becomes clear as to what ripe and not moot issues remain in

27              the plaintiffs' complaint;

28

12

(3)     Plaintiffs shall amend the complaint within 30 days to add the name of the new plaintiff that was formerly known as HMN.  Plaintiffs must also include the corporate status of that new plaintiff in their amendment;

(4)     The government shall file a monthly status report on the 15th of every month outlining the status of the regulations at issue;

(5)     The court will hold a case management conference on January 17, 2007 at 2:30 p.m. in order to discuss the next steps in this case and to revisit the issue of the government's compliance with Congress' direction to enact regulations;

(6)     The parties may notify the court by letter if they wish to advance the case management conference due to the promulgation of the regulations;

(7)     The parties shall not file any motions for summary judgment or for class certification until further notice of the court.

**IT IS SO ORDERED.**

Dated: August 16, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California