United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CATHOLIC CHARITIES CYO, et al.,

          Plaintiffs,

    v.

MICHAEL CHERTOFF, et al.,

          Defendants.

_____/

No. C 07-1307 PJH

**ORDER GRANTING MOTION TO DISMISS**

    The motion of defendants Michael Chertoff, Secretary, U.S. Department of Homeland Security ("the Secretary"); U.S. Department of Homeland Security ("DHS"); and U.S. Citizenship and Immigration Services ("USCIS") to dismiss the first amended complaint ("FAC") for lack of subject matter jurisdiction and failure to state a claim came on for hearing before this court on June 25, 2008.  Plaintiffs appeared by their counsel Peter A. Schey and Carlos R. Holguin, and defendants appeared by their counsel Jeffrey S. Robins.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

**STATUTORY AND REGULATORY BACKGROUND**

    With the enactment of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Congress created the "U" nonimmigrant classification ("U" visa) for victims of certain qualifying crimes.  VTVPA, Pub. L. 106-386, 114 Stat. 1464 (2000), <u>codified at</u>

United States District Court

For the Northern District of California

1   §§ 101(a)(15)(U), 214(p), and 245(m) of the Immigration and Nationality Act ("INA"), 8

2   U.S.C. §§ 1101(a)(15)(U), 1184(p), and 1255(m).[1]

3        The VTVPA, permits nonimmigrants (undocumented immigrants) who are victims of

4   serious crimes and who assist law enforcement in investigating and prosecuting those

5   crimes to apply for and receive "U" visas.  The duration of the "U" visa is four years.  An

6   immigrant who has held a "U" visa for three years may apply for lawful permanent resident

7   status.

8        Congress enacted the "U" visa provision in order to

9        strengthen the ability of law enforcement agencies to detect, investigate, and
         prosecute cases of domestic violence, sexual assault, trafficking of aliens,
10       and other crimes described in section 101(a)(15)(U)(iii) of the Immigration and
         Nationality Act committed against aliens, while offering protection to victims of
11       such offenses in keeping with the humanitarian interests of the United States.
         This visa will encourage law enforcement officials to better serve immigrant
12       crime victims and to prosecute crimes committed against aliens.

13   VTVPA, Pub. L. 106-386, at § 1513(a)(2)(A).  Congress intended that the "U" visa provision

14   would facilitate the reporting of crimes to law enforcement officials by "trafficked, exploited,

15   victimized, and abused aliens who are not in lawful immigration status" and would give "law

16   enforcement officials a means to regularize the status of cooperating individuals during

17   investigations or prosecutions."  Id. at § 1513(a)(2)(B).

18        The "U" nonimmigrant visa is available for issuance to an alien who,

19        (i) subject to [8 U.S.C. § 1184(p)], . . . files a petition for status under this
         subparagraph, if the Secretary of Homeland Security determines that –
20
              (I) the alien has suffered substantial physical or mental abuse as a
21       result of having been a victim of criminal activity described in clause (iii);

22            (II) the alien (or in the case of an alien child under the age of 16, the
         parent, guardian, or next friend of the alien) possesses information
23       concerning criminal activity described in clause (iii);

24            (III) the alien (or in the case of an alien child under the age of 16, the
         parent, guardian, or next friend of the alien) has been helpful, is being helpful,
25       or is likely to be helpful to a Federal, State, or local law enforcement official,

26   _____

27        [1] The VTVPA has three divisions: The Trafficking Victims Protection Act of 2000; the
     Violence Against Women Act of 2000; and a division with Miscellaneous Provisions.  Section
28   1513, the "U" visa provision, is part of the Violence Against Women Act of 2000.

United States District Court

For the Northern District of California

1   to a Federal, State, or local prosecutor, to a Federal or State judge, to the
2   Service, or to other Federal, State, or local authorities investigating or
    prosecuting criminal activity described in clause (iii); and

3           (IV) the criminal activity described in clause (iii) violated the laws of the
    United States or occurred in the United States (including in Indian country and
4   military installations) or the territories and possessions of the United States;

5   (ii) if accompanying, or following to join, the alien described in clause (i)--

6           (I) in the case of an alien described in clause (i) who is under 21 years
    of age, the spouse, children, unmarried siblings under 18 years of age on the
7   date on which such alien applied for status under such clause, and parents of
    such alien; or
8
            (II) in the case of an alien described in clause (i) who is 21 years of
9   age or older, the spouse and children of such alien; and

10  (iii) the criminal activity referred to in this clause is that involving one or more
    of the following or any similar activity in violation of Federal, State, or local
11  criminal law: rape; torture; trafficking; incest; domestic violence; sexual
    assault; abusive sexual contact; prostitution; sexual exploitation; female
12  genital mutilation; being held hostage; peonage; involuntary servitude; slave
    trade; kidnaping; abduction; unlawful criminal restraint; false imprisonment;
13  blackmail; extortion; manslaughter; murder; felonious assault; witness
    tampering; obstruction of justice; perjury; or attempt, conspiracy, or
14  solicitation to commit any of the above mentioned crimes;

15  8 U.S.C. § 1101(a)(15)(U)(i)-(iii).

16      A petitioner may not submit an "U" visa application without first obtaining a law

17  enforcement certification ("LEC") from a federal, state, or local law enforcement official,

18  prosecutor, judge, or other federal, state, or local authority investigating the criminal activity

19  described in § 1101(a)(15)(U)(iii), above, stating that the alien "has been helpful, is being

20  helpful, or is likely to be helpful in the investigation or prosecution of" such criminal activity.

21  investigating specific criminal activity.  See 8 U.S.C. § 1184(p)(1).  The certification may

22  also be provided by a DHS official whose ability to provide such certification is not limited to

23  information concerning immigration violations.  Id.

24      Congress also empowered the Attorney General[2] with discretion to convert the

25  status of such immigrants to that of permanent residents "when doing so is justified on

26  humanitarian grounds, for family unity, or is otherwise in the public interest."  See VTVPA,

27

28
    _____

        [2]  With the creation of DHS, this authority devolved to the Secretary.

United States District Court

For the Northern District of California

1   Pub. L. 106-386, at § 1513(a)(2)(C).  Thus, under 8 U.S.C. § 1255(m), the Secretary "may

2   adjust the status of an alien admitted into the United States (or otherwise provided

3   nonimmigrant status) under [the "U" visa provision of § 1101(a)(15)(U)] to that of an alien

4   lawfully admitted for permanent residence . . . ."  8 U.S.C. § 1255(m)(1).

5          In addition, if the Secretary has approved the adjustment of status of an alien under

6   subsection (1), the Secretary "may adjust the status of or issue an immigrant visa to a

7   spouse, a child, or in the case of an alien child, a parent who did not receive a

8   nonimmigrant visa [under the "U" visa provision of § 1101(a)(15)(U)] if the Secretary

9   considers the grant of such status or visa necessary to avoid extreme hardship."  8 U.S.C.

10  § 1255(m)(3).

11         When it enacted the VTVPA, Congress did not provide a deadline for the affected

12  agencies to promulgate regulations with regard to the "U" visas.  In 2005, Congress passed

13  the Violence Against Women Act ("VAWA 2005"), which the president signed on January 5,

14  2006.  That act required the Attorney General, the Secretary of Homeland Security, and the

15  Secretary of State to promulgate regulations to implement the "U" visa sections of the

16  VTVPA "not later than 180 days after the date of enactment."  VAWA 2005, Pub. L. 109-

17  162 at § 828, 119 Stat. 2960, 3006, codified at 8 U.S.C. § 1101.  Thus, the deadline for

18  promulgation of the "U" visa regulations was July 4, 2006.

19         In the absence of final regulations, the Department of Homeland Security operated

20  from interim guidance with regard to the "U" visa applications.  On August 30, 2001 and on

21  October 8, 2003, the Immigration and Naturalization Service ("INS") and USCIS[3] issued

22  interim guidance to establish interim procedures to be followed while the agencies acted to

23  promulgate regulations implementing the "U" visa and its protections.  Mem. from Michael

24  D. Cronin to Michael A. Pearson, re VTVPA Policy – "T" and "U" Nonimmigrant Visas (Aug.

25  30, 2001); Mem. from William R. Yates to Director, Vermont Service Center, re

26  Centralization of Interim Relief for U Nonimmigrant Status Applications (Oct. 3, 2003).

27

28         [3]  USCIS is the successor, for purposes of the VTVPA, to the INS.

United States District Court

For the Northern District of California

1    This guidance, now superceded by the interim final regulations, allowed potential "U"

2    victims who established prima facie eligibility for "U" non-immigrant status to be placed in

3    deferred action, paroled, or granted stays of removal, and to be granted work authorization

4    to work in the United States, to ensure that they were not removed from the country before

5    the agency could determine whether they were eligible for relief.  The guidance also

6    provided that such victims might receive work authorization.

7    Prior to the promulgation of the final regulations, there was no formal application to

8    be used for "U" visas.  The October 3, 2003 guidance provided that aliens who believed

9    they qualified for interim relief could submit correspondence along with evidentiary proof

10   addressing the four criteria listed in 8 U.S.C. § 1101(a)(15)(U)(i)(I)-(IV).  If the applicant did

11   not submit sufficient information to establish prima facie eligibility, or was otherwise

12   determined to be ineligible for interim relief, the applicant would receive a letter indicating

13   the reason the agency could not grant interim relief.  Beginning in October 2005, all such

14   requests were processed at USCIS' Vermont Service Center.  Oct. 3, 2003, Guidance at 2-

15   5; see Fonseca-Sanchez v. Gonzales, 484 F.3d 439, 442 n.5 (9th Cir. 2007).

16   On January 6, 2006, USCIS issued further guidance.  Mem. from Michael Aytes to

17   Director, Vermont Service Center, re Applications for U Nonimmigrant Status (Jan. 6,

18   2006).  This guidance indicated that when USCIS began adjudicating applications for "U"

19   visas, applicants who were granted interim relief and whose "U" visa applications were

20   subsequently approved would have their "U" nonimmigrant status recorded as of the date

21   the request for "U" interim relief was approved.  This guidance ensured that future "U" visa

22   recipients would not lose time accrual for other immigration benefits, and that potential "U"

23   visa recipients would not be prejudiced while the agency acted to implement the "U" visa

24   program.

25   On April 11, 2007, DHS sent an interim final rule for approval for publication in the

26   Federal Register.  The regulations were published as an interim final rule on September 17,

27   2007.  See 72 FR 53,014 (Sept. 17, 2007), to be codified at 8 C.F.R. parts 103, 212, 214,

28   248, 274a, and 299.

United States District Court

For the Northern District of California

1      The regulations became effective on October 17, 2007.  The regulations provided

2 that potential "U" visa petitioners who had previously received interim relief in the form of a

3 deferred action would have until April 16, 2008 to file a Form I-918 in order to petition for a

4 "U" visa and maintain the benefits of their interim relief during the adjudication of their "U"

5 visa petition.  The regulations also described the process for reviewing and screening "U"

6 visa petitions, including the provision that where additional evidence is required for

7 adjudication purposes, USCIS adjudicators would send a request for evidence ("RFE") to

8 the petitioner.

9      Following publication of the interim final rule in the Federal Register, USCIS

10 continued to review the comments that were received prior to the November 16, 2007,

11 deadline.  As a means of clarifying the interim final regulations and responding to a number

12 of the comments prior to promulgation of a final rule, USCIS issued clarifying guidance on

13 March 27, 2008.  Mem. from Michael Aytes to Field Leadership, re New Classification for

14 Victims of Criminal Activity – Eligibility for "U" Nonimmigrant Status (Mar. 27, 2008).  This

15 guidance instructed adjudicators, among other things, to consider the ages required to

16 establish the eligibility of derivative beneficiaries based on the date that USCIS received a

17 petitioner's request for interim relief in the form of a deferred action.

18                     **PROCEDURAL BACKGROUND**

19      The present action was filed as a proposed class action on March 6, 2007.  On

20 August 16, 2007, the court issued an order granting in part and denying in part defendants'

21 motion to dismiss, with leave to amend.  The first amended complaint ("FAC") was filed on

22 February 19, 2008, by five organizational and 18 individual plaintiffs.  Following is a

23 summary as the court understands the allegations.

24      The organizational plaintiffs are Catholic Charities CYO, International Institute of the

25 East Bay, Voces Unidas Project of the Center for Human Rights and Constitutional Law,

26 Sanctuary for Families, and Diocesan Migrant and Refugee Services, Inc.  These five

27 organizations provide services to immigrants, including assisting undocumented immigrants

28 to obtain legal status.

United States District Court

For the Northern District of California

1    The individual plaintiffs are Elizabeth Lopez Gomez, Sandra Bucio, Constantina

2  Campos, Maria Estervina Perez, Francisca Ramirez Alvarez, Irma Morena Sanvicente,

3  Maria Luisa Arroyo Torres, Alma Rosa Padilla de Hernandez, Maria Hernandez, Rosa

4  Amezquita Razo, Antonio Perez Garcia, Veronica Reyes Bonilla, Sergio Bucio Perez,

5  Andres Bucio Perez, Marlinda V. Clarke, Patricia Garcia, Blanca Rossell, and Melchor

6  Vargas Silva.

7    Plaintiffs Elizabeth Lopez Gomez, Sandra Bucio, Constantina Campos, Maria

8  Estervina Perez, and Francisca Ramirez Alvarez are individuals who are alleged to be

9  statutorily eligible for "U" visas because they are victims of serious crime who cooperated

10  with the authorities and provided useful information, and who received certifications to that

11  effect from law enforcement.  Plaintiffs allege that these individuals applied for "U" visas at

12  various times, and were placed in "deferred status" pending finalization of the regulations

13  and implementation of the "U" visa program.

14    Plaintiffs Irma Morena Sanvicente, Maria Luisa Arroyo Torres, and Alma Rosa

15  Padilla de Hernandez are individuals who are alleged to be statutorily eligible for "U" visas

16  because they are victims who cooperated with the authorities and provided useful

17  information, and who received certifications to that effect from law enforcement.  However,

18  unlike the first five plaintiffs listed above, these three plaintiffs were allegedly not placed in

19  "deferred status" by USCIS because the law enforcement certifications were not issued

20  within six months prior to the date each applied for the "U" visa, as required by the VTVPA;

21  and, in the case of Arroyo Torres and Padilla de Hernandez, the certifications were also not

22  signed by the head of a law enforcement agency designated to sign such certifications, as

23  required by the regulations.

24    Plaintiffs Rosa Amezquita Razo, Antonio Perez Garcia, Veronica Reyes Bonilla, and

25  Melchor Vargas Silva are individuals alleged to be victims of serious crime that fell under

26  the jurisdiction of federal law enforcement (generally U.S. Border Patrol, a division of U.S.

27  Customs and Border Protection), who cooperated with investigative authorities and are

28  otherwise eligible for "U" visas, but for whom defendants have allegedly refused to issue

7

1   LECs.

2          Plaintiffs Sergio Bucio Perez and Andres Bucio Perez are the minor children of

3   plaintiff Sandra Bucio, and are alleged to be statutorily eligible for derivative "U" visas.

4   Plaintiffs allege that but for defendants' failure to issue "U" visas to these plaintiffs when

5   they first applied, they would have accrued three years' in "U" visa status as of June 2007,

6   and since that time would have been eligible for lawful permanent residence.

7          Plaintiff Marlinda V. Clarke is the child of crime victim plaintiff Maria Hernandez; and

8   plaintiff Patricia Garcia is the child of a crime victim who is not named as a plaintiff in this

9   action.  Plaintiffs claim that plaintiffs Clarke and Garcia were formerly eligible for derivative

10  "U" visas based on their parents' eligibility for "U" visas, but are no longer eligible because

11  they have now passed their 21st birthdays.

12         Plaintiff Blanca Rossell is the mother of a crime victim and was formerly eligible for a

13  derivative "U" visa, but is alleged to be no longer eligible because her child is over the age

14  of 21.  Plaintiff Rossell's child is not a plaintiff.

15         Plaintiffs allege that while defendants have now promulgated the necessary

16  regulations, they have failed to redress certain injuries that plaintiffs claim resulted from

17  defendants' delay in implementing the "U" visa program.  These claimed injuries include

18  loss of accrued time toward eligibility for lawful permanent residence and naturalization.

19         Plaintiffs assert six causes of action:

20         (1)     failure to implement the "U" visa program until September 17, 2007; and

21  continuing failure to issue "U" visas, and legal permanent residency regulations or status to

22  persons entitled to such status, in violation of the VTVPA; the INA, 8 U.S.C. § 1103; the

23  Violence Against Women Act; the APA; and the due process and equal protection clauses

24  of the Fifth Amendment to the United States Constitution, FAC ¶¶ 57-58;

25         (2)     denial of derivative "U" visas to persons eligible during the alleged "seven-

26  year delay period" between the signing of the VTVPA and the promulgation of the

27  regulations, in violation of the the VTVPA; the INA, 8 U.S.C. § 1103; the VAWA; the APA;

28  and the due process and equal protection clauses of the Fifth Amendment to the United

United States District Court

For the Northern District of California

States Constitution, FAC ¶¶ 60-61;

(3)     imposition of "unreasonable requirements" for LECs without statutory authority, in violation of the INA, 8 U.S.C. §§ 1101(a)(15)(U) and 1184(p)(1); and the due process and equal protection clauses of the Fifth Amendment to the United States Constitution, FAC ¶ 63;

(4)     refusal to issue and set standards for issuance of law enforcement certifications to victims or crimes investigated by DHS officers or agents, in violation of the VTVPA; the APA; and the due process and equal protection clauses of the Fifth Amendment to the United States Constitution, FAC ¶ 65;

(5)     denial of equal protection to U.S. citizen crime victims by denying "U" visa eligibility "to the undocumented immigrant parents of United States citizen children who are the victims of crimes and who or whose parents cooperated with law enforcement agencies in the investigation or prosecution of such crimes, while granting such benefit to the immigrant parents of undocumented and lawful permanent resident children," FAC ¶ 67; and

(6)     refusal to issue documentation of employment authorization to derivative "U" visa holders except upon separate application and payment of fee, in violation of the VTVPA; and the due process and equal protection clauses of the Fifth Amendment to the United States Constitution.

Plaintiffs seek a judicial declaration that the policies, procedures, and practices alleged in the FAC violate the INA, as modified by the VTVPA; the VAWA; the APA; and the due process and equal protection clauses of the Fifth Amendment to the United States Constitution.  Plaintiffs also seek injunctive relief.

Defendants now seek an order dismissing the FAC, arguing that the court lacks subject matter jurisdiction because certain of plaintiffs' claims are moot or unripe, and because plaintiffs lack standing; and also arguing that the FAC fails to state a claim as to certain causes of action.

**DISCUSSION**

United States District Court

For the Northern District of California

A.    Legal Standards

    1.    Dismissal for Lack of Subject Matter Jurisdiction

    Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction.  See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).  The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.  Id.   Federal courts are courts of limited jurisdiction.  Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

    The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); see also Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).  The defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating lack of jurisdiction on the facts of the case. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where the  defendants challenge jurisdiction over certain claims of the complaint solely as a matter of law, all allegations of the complaint are taken as true and all disputed issues of fact are resolved in favor of the non-moving party.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1990).

    A motion to dismiss for lack of subject matter jurisdiction may also be a "speaking motion" in which the defendant actually challenges the existence of subject matter jurisdiction.  In such a case, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Thornhill Publ'g v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Moreover, the plaintiff must establish jurisdiction with evidence such as affidavits or depositions.  See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2008) §§ 9:77-78.

    Standing is a critically important jurisdictional limitation, "an essential and

United States District Court

For the Northern District of California

1    unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders

2    of Wildlife, 504 U.S. 555, 560 (1991).  It is not subject to waiver; like subject matter

3    jurisdiction generally, it must be considered by the federal courts even if the parties do not

4    raise it.  United States v. Hays, 515 U.S. 737, 742 (1995).  Plaintiffs bear the burden of

5    establishing standing.  Central Delta Water Agency v. United States, 306 F.3d 938, 947

6    (9th Cir. 2002).

7            The doctrine of standing incorporates both constitutional requirements and

8    "prudential considerations." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99

9    (1979).   To establish a "case or controversy" within the meaning of Article III, the plaintiff

10   must show an injury in fact that is concrete and not conjectural, a causal connection

11   between the injury and the defendant's conduct or omissions, and a likelihood that the

12   injury will be redressed by a favorable decision.  Lujan, 504 U.S. at 559-61.  Plaintiffs may

13   have to establish "prudential" standing by showing that the interest sought to be protected

14   is arguably within the zone of interests to be protected by the statute in question.  National

15   Credit Union Adm. v. First Nat'l Bank & Tr. Co., 522 U.S. 479, 488 (1998).

16          2.      Dismissal for Failure to State a Claim

17          A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

18   alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

19   Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

20   Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for

21   failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

22   requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) requires only that the

23   complaint include a "short and plain statement of the claim showing that the pleader is

24   entitled to relief."  Fed. R. Civ. P. 8(a)(2).

25          Specific facts are unnecessary – the statement need only give the defendant "fair

26   notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct.

27   2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)).

28   All allegations of material fact are taken as true.  Erickson, 127 S.Ct. at 2200.  However, a

United States District Court

For the Northern District of California

1    plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than

2    labels and conclusions, and a formulaic recitation of the elements of a cause of action will

3    not do." Bell Atlantic, 127 S.Ct. at 1964-65 (citations and quotations omitted).  Rather, the

4    allegations in the complaint "must be enough to raise a right to relief above the speculative

5    level." Id. at 1965.  A motion to dismiss should be granted if the complaint does not proffer

6    enough facts to state a claim for relief that is plausible on its face.  See id. at 1966-67.

7    B.    Defendants' Motion

8          Defendants argue that each of the six causes of action alleged in the FAC should be

9    dismissed.  They separate the discussion of the statutory claims from the discussion of the

10   constitutional claims.

11         1.    First cause of action – statutory claims

12         In the first cause of action, plaintiffs allege that defendants failed to implement the

13   "U" visa program until September 17, 2007; and have also failed to issue "U" visas, and

14   legal permanent residency ("LPR") regulations or status to persons entitled to such status,

15   in violation of the VTVPA; the INA, 8 U.S.C. § 1103; the VAWA; and the APA.

16         The first cause of action appears to consist of three separate claims based on the

17   VTVPA and the APA – (a) that defendants failed to implement the "U" visa provision

18   (8 U.S.C. § 1101(a)(15)(U)) until September 17, 2007; (b) that defendants continue to deny

19   "U" visas and LPR status to crime victims and their close family members who are lawfully

20   entitled to such status; and (c) that defendants unlawfully failed to issue lawful permanent

21   status regulations.

22         Defendants argue that the first cause of action should be dismissed for four reasons.

23   First, they contend that the claim of failure to implement the "U" visa program until

24   September 17, 2007, should be dismissed for lack of standing and as moot.  Defendants

25   assert that no plaintiff has standing to challenge defendants' alleged delay in the

26   promulgation of regulations where the remedy for such violation – a court order directing

27   the promulgation of the regulations – would not address any of the plaintiffs' alleged

28   injuries.  For the same reason, they argue, this claim is moot.

**United States District Court**
For the Northern District of California

1      Second, defendants assert that the claims regarding the alleged delay in

2  promulgating adjustment regulations for "U" visa recipients – the claim that defendants

3  unlawfully failed to issue regulations allowing eventual "U" visa recipients to apply for LPR

4  status – should be dismissed for lack of ripeness, as none of the plaintiffs are "U" visa

5  recipients, and thus have not suffered the harm alleged, regarding the accrual of time for

6  LPR status.

7      Third, defendants contend that none of the plaintiffs has standing to challenge

8  USCIS' alleged unlawful failure to grant "U" visas and LPR status to plaintiffs because

9  plaintiffs have no clear right to receive those benefits.  In addition, defendants note that the

10  FAC does not allege any violation of plaintiffs' right to apply for "U" visas, but rather asserts

11  a claim based on an alleged violation of plaintiffs' right to receive "U" visas.  Defendants

12  contend that because no plaintiff can show that he/she had a right to receive a "U" visa

13  during the seven months since the "U" visa regulations became effective, this claim should

14  be dismissed for lack of standing.

15      Fourth, defendants assert that the court lacks jurisdiction over this claim because

16  the pace and outcome adjudications of "U" visa petitions and lawful permanent residence

17  status applications are not legally required and are committed to agency discretion by law.

18  Defendants contend that because there is no requirement that obligates USCIS to grant "U"

19  visas or LPR status to plaintiffs, and because there is no requirement that controls when

20  USCIS must complete the adjudication of "U" visa petitions and applications for LPR

21  status, and because there is no requirement that USCIS cut short the statutorily-mandated

22  time an alien must have been in LPR status to gain eligibility for naturalization, the court

23  should find that it lacks jurisdiction over the first cause of action.

24      In opposition, plaintiffs assert that the regulations promulgated by defendants have

25  made no plaintiff or proposed class member whole, and assert that the claim alleging the

26  unlawful "seven-year delay" in issuing "U" visas therefore remains justiciable.  Plaintiffs

27  argue that they have standing based on the injury caused by defendants' continuing delay

28  in issuing "U" visas (including the alleged delay in adjudicating "U" visa applications, and

13

United States District Court

For the Northern District of California

1  the continuing injury from past delay); and that they have standing to sue for timely

2  adjudication of their eligibility for "U" visas, regardless of whether they are ultimately

3  granted such visas, because it is based on their "right to apply" for "U" visas.  They also

4  assert that after seven years (apparently referring to the time from the enactment of the

5  VTVPA to the filing of the present action), their challenge to defendants' delay in

6  implementing the "U" visa program is more than ripe for review.

7       The motion to dismiss the statutory claims in the first cause of action is GRANTED.

8  As an initial matter, the court notes that plaintiffs' repeated reference to the "seven-year

9  delay" in implementing the "U" visa program is misleading.  Congress did not issue a

10 directive to promulgate regulations to implement the program until it enacted VAWA 2005,[4]

11 at which time, Congress gave USCIS 180 days to promulgate regulations – or until July 5,

12 2006.  The interim final regulations were published on September 17, 2007.  Thus, any

13 delay that can be attributed to defendants regarding the promulgation of "U" visa

14 regulations is at most 14 months.

15      Moreover, the claim regarding the failure to promulgate "U" visa regulations is now

16 moot, and the motion to dismiss that claim is GRANTED.  An issue is moot "when the

17 issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

18 outcome."  City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000).  If the parties cannot

19 obtain any effective relief, any opinion about the legality of a challenged action would be

20 advisory.  Id.  "[A]n actual controversy must be extant at all stages of review, not merely at

21 the time the complaint is filed."  Arizonans for Official English v. Arizona, 520 U.S. 43, 67

22 (1997) (citation and quotation omitted).  Here, the claim is moot because the regulations

23 were published as an interim final rule in the Federal Register more than fifteen months

24 ago, six months after plaintiffs filed the present action.  A federal court has no authority to

25 give opinions on moot questions.  See id.

26

27      [4] Indeed, defendants point out, the VTVPA was silent with regard to any deadline for

28 the promulgation of "U" visa regulations, although it did set specific deadlines for other provisions of the VTVPA.

United States District Court

For the Northern District of California

1   The court also finds that plaintiffs lack standing to challenge the delay in the

2   promulgation of the regulations.  The APA grants federal court standing to any "person

3   suffering legal wrongs because of agency action, or adversely affected or aggrieved by

4   agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  A plaintiff seeking

5   judicial review of agency action under the APA must meet not only the constitutional

6   requirements of standing, but must also demonstrate prudential standing.  National Credit

7   Union Admin., 522 U.S. at 488.

8   Thus, to establish standing under the APA, a plaintiff must show injury in fact,

9   causation, a likelihood of redressability, and that he falls "within the 'zone of interests' to be

10  protected or regulated by the underlying statute in question."  Graham v. Federal

11  Emergency Management Agency, 149 F.3d 997, 1001 (9th Cir. 1998); see also National

12  Credit Union, 522 U.S. at 487-90.  Here, the court finds that plaintiffs lack standing to

13  challenge the delay in the promulgation of regulations because the remedy for such

14  violation – a court order directing the promulgation of the regulations – would not address

15  any of the plaintiffs' alleged injuries.

16  The court finds further that the claims regarding the alleged delay in promulgating

17  adjustment regulations for "U" visa recipients is not ripe.  "The ripeness doctrine prevents

18  premature adjudication.  It is aimed at cases that do not yet have a concrete impact upon

19  the parties arising from a dispute, in an analysis similar to the injury-in-fact inquiry under

20  the standing doctrine."  Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before

21  Trial (2008 ed.) § 2:1278.

22  In determining whether issues raised in cases seeking injunctive and declaratory

23  judgment remedies are ripe for review, courts look at the fitness of the issues for judicial

24  review, and the hardship to the parties if the court were to withhold consideration.  Abbot

25  Laboratories v. Gardner, 387 U.S. 136, 149 (1967).

26  With regard to the fitness of the issues for review, courts generally consider whether

27  the matter is purely legal, whether consideration of the issue would benefit from a more

28  concrete foundation, and whether the agency's action is final.  See National Park

United States District Court

For the Northern District of California

1    Hospitality Ass'n v. Department of Interior, 538 U.S. 803, 811 (2003).  Here, because none

2    of the plaintiffs have received "U" visas, and there is no clear evidence that any of the

3    plaintiffs will receive "U" visas, the facts are not fully developed enough for the court to find

4    that plaintiffs can challenge USCIS' obligations regarding the promulgation of an

5    adjustment-of-status rule.

6         With regard to the hardship on the parties, courts generally consider whether any

7    delay would cause hardship to the plaintiffs, whether the court's intervention would interfere

8    with further administrative action, and whether the court would benefit from further factual

9    development.  See Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998).  Here,

10   dismissing a challenge to a claim of delay regarding plaintiffs' eligibility for adjustment of

11   status – where eligibility for "U" visas has not yet been adjudicated – would pose no

12   immediate detrimental impact.[5]

13        Finally, the court finds that plaintiffs lack standing to assert the claim of failure to

14   issue the "U" visas and grant LPR status.  The VTVPA vests the Secretary with discretion

15   to determine eligibility for "U" visas, and also whether to adjust the status of the immigrant

16   applicants, and the applicable statutes do not mandate a particular outcome or confer any

17   established or protected interest in the grant of a "U" visa or LPR status.  Thus, because

18   the outcome of such determinations are committed to USCIS' discretion by law, plaintiffs

19   lack standing to challenge the alleged failure to grant "U" visas or LPR status.  See 5

20   U.S.C. § 701(a)(2); Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986) (APA entitles any

21

22        [5] Only seven of the individual plaintiffs are alleged to be eligible for adjustment of status
     – Elizabeth Lopez Gomez; Sandra Bucio; Constantina Campos; Maria Estervina Perez;
23   Francisca Ramirez Alvarez; Sergio Bucio Perez, and Andres Bucio Perez – and of those,
     plaintiffs do not allege that Campos and Ramirez Alvarez have petitioned for a "U" visa.  In
24   addition, the petitions of Lopez Gomez and Estervina Perez cannot be adjudicated until USCIS
     receives responses to its RFEs.

25
          Only Sandra Bucio and her two sons appear to be near the point of having their "U" visa
26   petitions adjudicated.  However, the Bucio plaintiffs cannot show injury because if their
     petitions are denied, the alleged harm caused by USCIS' failure to promulgate adjustment of
27   status regulations will be merely hypothetical, and if the petitions are granted, the regulations
     will likely be promulgated during the six-month period that is normally required to process an
28   adjustment of status application in the San Francisco District Office.

United States District Court

For the Northern District of California

1   person "affected or aggrieved by agency action to judicial review," 5 U.S.C.

2   § 702, unless the relevant statute precludes judicial review or "agency action is committed

3   to agency discretion by law," id. § 701(a)(1)).

4          When an agency is presented with an unreasonable delay claim under the APA, it

5   can be compelled to take action only where the action in question is a "discrete action that

6   [the agency] is legally required to take." Norton v. Southern Utah Wilderness Alliance, 542

7   U.S. 55, 63 (2004). Here, because the statutes vest the Secretary with discretion as to the

8   issuance of "U" visas and LPR status, and because there is no legal requirement for USCIS

9   to complete the adjudication of "U" visa petitions and applications for LPR status within a

10  particular time period, the court lacks jurisdiction to review the claims asserted in the first

11  cause of action.

12          2.      Second cause of action – statutory claims

13          In the second cause of action, plaintiffs allege that defendants failed to timely

14  implement the "U" visa program and illegally failed to issue "U" visas to persons eligible

15  "during the seven year delay period." The second cause of action appears to assert a

16  claim that USCIS' regulations act to illegally deny derivative U visa status because of the

17  date used to determine eligibility.

18          The VTVPA provides that parents, spouses, children, and unmarried siblings (under

19  18 years of age) may derive "U" visa benefits from principal relatives who are under the age

20  of 21 on the date on which "such alien applied for ["U" visa] status," but that only spouses

21  and children (under 21 years of age) may derive "U" visa status from principal relatives over

22  21 years of age. 8 U.S.C. §§ 1101(a)(15)(U)(ii)(I), (II).

23          Plaintiffs assert that the result of defendants' delay in implementing the "U" visa

24  program is that plaintiffs Marlinda Clarke and Patricia Garcia, who would have been eligible

25  to receive derivative "U" visas as children of crime victims, have now "aged out" of eligibility

26  because they have passed the age of 21. Plaintiffs also contend that plaintiff Blanca

27  Rossell is the parent of a crime-victim child who would have been eligible for a derivative

28  "U" visa but is no longer eligible because the child has passed the age of 21.

17

United States District Court

For the Northern District of California

1    Defendants argue that the second cause of action should dismissed as moot and for

2    lack of standing, because the March 27, 2008 guidance eliminated the claimed injury.  The

3    March 27, 2008 guidance instructs adjudicators to determine derivative "U" visa eligibility

4    based on, if possible, the date that the interim relief beneficiaries first applied for such

5    benefits, in order to ensure that interim relief beneficiaries and their derivative parents,

6    spouses, or children are not prejudiced by the fact that it took USCIS some time to

7    promulgate the "U" visa regulations.

8    Under this guidance, if a crime victim who is under the age of 21 requested interim

9    relief in the form of deferred action prior to the date he/she turned 21, then his/her parents

10   would be eligible for derivative "U" visas even after the crime victim turned 21.  Similarly, if

11   an adult crime victim requested interim relief in the form of deferred action prior to the time

12   his/her minor children turned 21, those children would be eligible for derivative "U" visas

13   after they turned 21.

14   Here, defendants assert, Marlinda Clarke and Patricia Garcia appear eligible to

15   receive derivative "U" visa benefits if their principals' applications are granted, because the

16   FAC alleges that their requests for interim relief in the form of deferred action were

17   received before either turned 21.  Defendants also contend, however, that plaintiffs do not

18   allege that the principal beneficiaries from whom Clarke and Garcia claim to derive their

19   derivative status applied for "U" visas.

20   Marlinda Clarke's mother Maria Hernandez is alleged to be a victim of felony assault

21   who cooperated with law enforcement in the investigation of the crime against her.  In

22   December 2006, Hernandez petitioned USCIS for benefits for herself and her two

23   daughters.  Clarke allegedly turned 21 four days after Hernandez submitted the petition.  In

24   April 2007, defendants granted Hernandez and her daughters deferred action, but did not

25   issue "U" visas because the "U" visa program had not yet been implemented.  Plaintiffs do

26   not allege that Hernandez subsequently applied for a "U" visa.  In February 2008,

27   defendants notified Hernandez that Clarke's application for a "U" visa was being returned to

28   her because she had turned 21 and was therefore ineligible for derivative status.

United States District Court

For the Northern District of California

1    Patricia Garcia's mother is alleged to be a crime victim who cooperated with law

2    enforcement in the investigation of that crime.  In July 2007, USCIS granted Garcia interim

3    relief, but did not issue a "U" visa because the "U" visa program had not yet been

4    implemented.  Plaintiffs do not allege that Garcia's mother subsequently applied for a "U"

5    visa.  They assert only that Garcia turned 21 in September 2007, and is now deemed

6    ineligible for a derivative "U" visa.

7    It appears that Blanca Rossell might be eligible to claim derivative benefits based on

8    her under-21 daughter's alleged eligibility as a "U" visa applicant, as asserted in the FAC.

9    However, the FAC also alleges that Rossell's daughter Georgette Fernandez was born on

10    April 25, 1980.  FAC ¶ 23.  If true, this would mean that she turned 21 on April 25, 2001,

11    five years prior to the time that plaintiffs allege that Rossell would have begun accruing time

12    towards lawful permanent resident status.  In addition, the statement that Fernandez was

13    born on April 25, 1980 conflicts with the statement that Fernandez turned 21 on September

14    16, 2007.  Id.

15    Defendants contend that because plaintiffs do not allege that the principal

16    beneficiaries from whom Marlinda Clarke, Patricia Garcia, or Blanca Rossell claim to derive

17    their derivative status have petitioned for a "U" visa, it is impossible for Clarke, Garcia, or

18    Rossell to have their alleged injuries redressed, because they are otherwise unable to

19    receive derivative "U" visas even if the court provides some remedy for their alleged

20    injuries.  Similarly, defendants contend, the organizational plaintiffs lack standing because

21    the individual plaintiffs lack standing.

22    Thus, defendants argue, whether the court finds that the March 27, 2008 guidance

23    has mooted out plaintiffs' claims, or that no plaintiff has standing to assert the second

24    cause of action, this claim should be dismissed.

25    In opposition, plaintiffs assert that the March 27, 2008 guidance is "largely

26    unintelligible," and even if improperly construed favorably to defendants, does nothing for

27    "aged-out" family members ineligible for deferred action.  Plaintiffs claim that the guidance

28    is insufficient to moot plaintiffs' claims, because it does not specify what sort of "filing" will

United States District Court

For the Northern District of California

1   trigger the age freeze, and because it contains no suggestion that USCIS has notified

2   persons whose applications CIS expressly rejected prior to issuance of the guidance that

3   they may and should re-submit their application for derivative U-visas.  Plaintiffs contend

4   they retain standing to sue for injunctive relief to compel defendants to notify rejected

5   applicants of their right to re-submit applications for derivative "U" visas for re-adjudication

6   pursuant to the March 27, 2008 guidance.

7       Finally, plaintiffs assert that the March 27, 2008 guidance is ineffectual because it

8   applies only to individuals who applied for interim relief.  They contend, however, that many

9   family members of crime victims did not apply for interim relief because they believed they

10  were ineligible, based on the policy stated in the October 8, 2003 guidance (requiring a

11  showing of extreme hardship if the family member were removed from the United States, in

12  addition to the other requirements for a derivative "U" visa), and would not be excluded

13  from the purported benefits of the March 27 guidance no matter how it is interpreted.

14      The court finds that the motion to dismiss the second cause of action must be

15  GRANTED.  The general claim that defendants have illegally denied derivative status to

16  unidentified plaintiffs who had "aged out" of eligibility has been mooted by the issuance of

17  the March 27, 2008 guidance.

18      As for plaintiffs Marlinda Clarke, Patricia Garcia, and Blanca Rossell, it appears that

19  they are not eligible for derivative "U" visas, as the FAC does not allege that the principal

20  beneficiaries from whom they claim to derive their derivative status actually applied for "U"

21  visas.  If, in fact, their principal beneficiaries did apply for "U" visas, plaintiffs may amend

22  the complaint to so allege.

23      3.      Third and sixth causes of action – statutory claims

24      The third cause of action alleges that defendants imposed unreasonable

25  requirements for law enforcement certifications without statutory authority, in violation of 8

26  U.S.C. §§ 1101(a)(15)(U) and 1184(p)(1); and the sixth cause of action alleges that

27  defendants refused to issue documentation of employment authorization to derivative "U"

28  visa holders, except upon separate application and payment of a fee, in violation of the

20

United States District Court

For the Northern District of California

1    VTVPA.

2        Defendants argue that the third and sixth causes of action fail because the VTVPA

3    provides no private right of action.  They also assert that plaintiffs fail to state a claim that

4    USCIS' regulations conflict with the VTVPA or are otherwise an impermissible construction

5    of the statute.

6        Defendants' first argument is that plaintiffs cannot independently challenge a

7    violation of the VTVPA.  They contend that neither federal question jurisdiction nor the

8    Declaratory Judgment Act is sufficient to confer jurisdiction, and that the VTVPA does not

9    create a private right of action.

10        In opposition, plaintiffs assert that the court rejected this argument when defendants

11    previously raised it in the motion to dismiss the original complaint.[6]  In addition, in what

12    appears to be an attempt to evade the page limits set forth in Civil Local Rule 7-4(b),

13    plaintiffs incorporate by reference the arguments made regarding this issue in their

14    opposition to the motion to dismiss the original complaint.

15        A private right of action to enforce an alleged violation of a federal statute must be

16    created by Congress.  Alexander v. Sandoval, 532 U.S. 275, 287 (2001).  Absent an

17    express or implied statutory intent to create a private right of action to enforce a statute and

18    its accompanying remedy, a cause of action does not exist and courts may not create one.

19    Id. at 286-87.  The question whether Congress intended to create a private right of action is

20    "definitely answered in the negative where a statute by its terms grants no private rights to

21    any identifiable class."  Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002).  In addition,

22    even if the statute creates explicit rights, the plaintiff must also show that "the statute

23    manifests an intent to create not just a private right but also a private remedy."  Id. at 284.

24        The VTVPA is a regulatory statute, and the "U" visa provision does not contain an

25    express private right of action.  Thus, the court must determine whether the statute

26    contains an implied private right of action.  The factors the court must consider include

27    _____

28        [6]  The court does not agree with this assessment of its ruling in the previous motion to dismiss.

21

United States District Court

For the Northern District of California

1    whether the plaintiff is a member of the class for whose special benefit the statute was

2    enacted; whether there is any indication of legislative intent to imply a civil remedy for the

3    plaintiff; whether it is consistent with the statute's purpose to allow a private right; and

4    whether the cause of action is traditionally relegated to state law. Cort v. Ash, 422 U.S. 66,

5    78 (1975).  The ultimate test is "whether Congress intended to create the private remedy

6    asserted." Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16 (1979); see

7    also Alexander, 532 U.S. at 286.

8           In their prior opposition, plaintiffs argued that they clearly belong to the class for

9    whose benefit the "U" visa law was enacted.  They also asserted that the "U" visa statute

10   "embodies an unmistakable, if implicit, legislative intent to create a remedy," as it requires

11   that the "U" visa process be initiated by the crime victim (which requirement, they asserted,

12   shows Congress' intent that the "U" visa statute confer individual rights, enforceable by a

13   private right of action).  They argued further that the legislative history supported an intent

14   to create enforceable rights, as one of its stated purposes was to offer protection to alien

15   crime victims.  Finally, they asserted that the claims for relief asserted in this action are a

16   matter of exclusive federal prerogative, not state law.

17          The court finds that the motion to dismiss the claims under the third and sixth causes

18   of action must be GRANTED, because plaintiffs have failed to establish that they have a

19   private right of action under the VTVPA.  The parties agree that the pertinent sections of

20   the INA do not contain an express private right of action.  To determine whether there is an

21   implied private right of action, the court applies the four Cort v. Ash factors.  The court finds

22   that while plaintiffs satisfy the first factor, as they are clearly part of the class for whose

23   benefit the statute was enacted, see 8 U.S.C. § 1101(a)(15)(U), they do not satisfy the

24   second or third factors.

25          With regard to the second factor – whether there is any indication of legislative intent

26   to imply a civil remedy for the plaintiff – § 1101(a)(15)(U) simply sets forth eligibility

27   standards, which determine who may file for "U" visa status.  The court finds no indication

28   that Congress intended to imply both a private right and a private civil remedy for aggrieved

United States District Court

For the Northern District of California

1   plaintiffs who claim that they applied for a "U" visa and were wrongfully denied one.  Nor do

2   plaintiffs cite any legislative history that specifically addresses that issue.

3          The third factor – whether it is consistent with the statute's purpose to allow a private

4   right – also does not support a finding of a private right of action.  The stated purpose of the

5   statute is two-fold.  First, Congress wanted to "create a new nonimmigrant visa

6   classification that will strengthen the ability of law enforcement agencies to detect,

7   investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens,

8   and other crimes described in section 101(a)(15)(U)(iii) [of the INA] committed against

9   aliens."  Second, Congress wanted to "offer[ ] protection to victims of such offenses in

10   keeping with the humanitarian interests of the United States."  Pub. L. 106-386

11   § 1513(a)(2)(A).

12          The court does not interpret the purpose of "offering protection to" crime victims as

13   implying a private civil right of action under the statute.  At most, there might be an implied

14   right to apply for the "U" visa, but the gravamen of the FAC is that plaintiffs are seeking to

15   enforce a right to receive "U" visas.

16          Plaintiffs argued in their opposition to the motion to dismiss the original complaint

17   that federal courts have entertained suits by plaintiffs under the INA seeking immigration-

18   related benefits.  It is true that there are provisions within the INA that confer private rights

19   of action.  However, when faced with a statutory scheme in which some provisions provide

20   for private rights of actions while others do not, the Supreme Court has found no private

21   right of action where one is not specifically articulated.  Touche Ross & Co. v. Redington,

22   442 U.S. 560, 572 (1979).

23          Moreover, the cases cited by plaintiffs are distinguishable.  For example, in Orantes-

24   Hernandez v. Thornburgh, 919 F.2d 549 (9th Cir. 1990), one of the three cases cited by

25   plaintiffs, the complaint alleged that INS officials and Border Patrol Agents had prevented

26   members of the class from exercising their statutory right to apply for political asylum under

27   the provisions of 8 U.S.C. § 1158(a), and had also interfered with the class members' ability

28   to obtain counsel, a right guaranteed by 8 U.S.C. § 1362 and the due process clause.  The

United States District Court

For the Northern District of California

1    Ninth Circuit affirmed the permanent injunction, based on the violations of the INA.

2          However, the court did not consider the question whether the INA contained an

3    implied private right of action.  Moreover, the issue was the statutory right to apply for

4    asylum, and the statutory right to be represented by counsel – not any statutory right to be

5    granted asylum.  This is a distinction that defendants make in the present motion with

6    regard to the first cause of action, but not with regard to the third and sixth causes of

7    action.  Thus, the third Cort v. Ash factor does not favor a finding of an implied private right

8    of action.

9          With regard to the fourth factor – whether the cause of action is one traditionally

10   relegated to state law – the issues are purely federal law issues.

11         Defendants also argue that the third and sixth causes of action fail to state a claim

12   for which relief can be granted.  They contend that in each instance, the asserted claim is

13   based on agency action committed to agency discretion by law, and that the court is

14   required to give deference to USCIS' interpretation of the statute, so long as that

15   interpretation is reasonable.  However, having found no private right of action under the

16   asserted provisions of the VTVPA, the court finds it unnecessary to address this argument.

17         4.        Fourth cause of action – statutory claims

18         In the fourth cause of action, plaintiffs allege that defendants unlawfully failed to

19   issue LECs to victims of crimes investigated by DHS and its divisions, and also failed to

20   publish regulations or otherwise establish procedures governing the issuance of such

21   certifications by DHS, in violation of the APA and the VTVPA.  Defendants argue that the

22   fourth cause of action should be dismissed for lack of jurisdiction and for failure to state a

23   claim.

24         Defendants first argument is that the court lacks jurisdiction over the allegations that

25   DHS and U.S. Customs and Border Protection ("USCBP") unlawfully refused to issue LECs

26   because the actions plaintiffs complain of are actions within the unfettered discretion of

27   USCBP.  Specifically, defendants assert that the decision whether or not to issue an LEC is

28   a discretionary decision within the context of 8 U.S.C. § 1252(a)(2)(B)(ii).

United States District Court

For the Northern District of California

1    Defendants' second argument is that no plaintiff has standing to challenge USCBP's

2   alleged failure to issue LECs or challenge DHS or USCBP's alleged failure to publish

3   regulations or otherwise establish standards.  The only plaintiffs who allege injuries that fall

4   under the fourth cause of action are Rosa Amezquita Razo, Antonio Perez Garcia,

5   Veronica Reyes Bonilla, and Melchor Vargas Silva.  Amezquita Razo, Perez Garcia, and

6   Reyes Bonilla all allege that they were helpful to the USCBP's investigation or prosecution

7   of criminal activity, and that USCBP's refusal to issue an LEC was based on a "policy and

8   practice against issuing any certifications regardless of the merits of any individual

9   request."  Vargas Silva alleges that he cooperated with the USCBP's investigation into a

10   claimed felonious assault perpetrated by a Border Patrol agent, but that USCBP unlawfully

11   refused to issue Vargas Silva an LEC.

12    Defendants assert that with regard to Amezquita Razo, Perez Garcia, and Reyes

13   Bonilla, USCBP officially informed plaintiffs' counsel on May 17, 2007, that the Yuma,

14   Arizona, Border Sector of USCBP, from which plaintiffs requested LECs, was not involved

15   with the case and was therefore not able to provide the LECs, and stated further that the

16   incident had been referred to U.S. Immigration and Customs Enforcement ("ICE").  Thus,

17   defendants assert, none of these three plaintiffs can maintain a claim of injury based on

18   USCBP's investigation and subsequent failure to provide LECs because the USCBP did

19   not in fact pursue an investigation.

20    Defendants contend further that none of the injuries claimed by any of these four

21   defendants is traceable to USCBP, where other federal, state, or local law enforcement

22   agencies may have been better positioned to address plaintiffs' requests for LECs.  In

23   addition, they argue, any court order directing the development of regulations or policies

24   concerning issuance of LECs by USCBP would not necessarily provide redress for

25   plaintiffs' alleged injuries, as it is not clear that the result would be the issuance of LECs to

26   each of them.

27    Defendants' third argument is that the APA precludes review of USCBP's alleged

28   failure to issue LECs or otherwise establish standards because such actions are committed

United States District Court

For the Northern District of California

to agency discretion and are not legally required.  Defendants assert that they are not legally required to take the action that plaintiffs seek to compel, as 8 U.S.C. § 1184(p)(1) grants the Secretary of DHS discretion over whether to issue LECs.  While it is true, defendants note, that VAWA 2005 mandated the promulgation of regulations implementing the "U" visa program, there is no requirement that DHS or any of its divisions take discrete action to specify the parameters of their own issuance of LECs – rather, DHS and its divisions are free to determine whether to fashion their own rules of procedure in discharging their duties.

In opposition, plaintiffs make four arguments.  First, they argue that while 8 U.S.C. § 1252(a)(2)(B)(ii) may insulate the exercise of discretion in certain situations from judicial review, it does not remove jurisdiction to adjudicate a claim that defendants failed to exercise discretion at all.

Second, plaintiffs contend that defendants' blanket refusal to exercise discretion is reviewable under the APA, because it is not a challenge to agency action committed to agency discretion by law, but rather a challenge to an agency's failure to exercise discretion at all.  They assert that where Congress has authorized an agency to issue regulations, the content of the regulations may be committed to the Secretary's discretion, but this does not mean that the Secretary has unbridled discretion to refuse to issue any regulations.  Plaintiffs claim that in the present case, defendants' refusal to issue law enforcement certifications to the victims of crimes that defendants themselves have investigated is not a discretionary decision, but is a refusal to exercise discretion at all.

Third, plaintiffs claim that defendants' alleged "absolute no-certification policy" violates the plain language and underlying intent of the VTVPA, because the VAWA Reauthorization Act specifically directed the Secretary to "promulgate regulations to implement the provisions contained in the Battered Immigrant Women Protection Act of 2000."  Thus, plaintiffs assert, defendants were required to issue regulations.

Fourth, plaintiffs argue that they have standing to challenge defendants' refusal to exercise discretion to issue U certifications.  They claim that plaintiffs "have suffered an

United States District Court

For the Northern District of California

injury as a direct result of and have standing to challenge defendants' demand for U certifications to accompany all "U" visa applications, and simultaneous refusal to issue U certifications when defendants' agencies are the ones involved in the criminal investigation."  While plaintiffs do not refer to specific individual plaintiffs, they appear to be arguing that with regard to plaintiffs Amezquita Razo, Perez Garcia, and Reyes Bonilla, it is irrelevant that the Border Patrol office that plaintiffs applied to for the LECs was not the office that investigated the crime, because that office is part of "defendants' agencies."

The court finds that the motion must be GRANTED.  First, defendants have established that Rosa Amezquita Razo, Antonio Perez Garcia, and Veronica Reyes Bonilla lack standing to challenge USCBP's alleged failure to issue LECs.  The Yuma, Arizona, Border section of USCBP, from which Amezquita Razo, Perez Garcia, and Reyes Bonilla requested LECs was not involved in the case, and plaintiffs were informed of that fact when they requested the LECs.  They lack standing to assert injuries based on the USCBP's investigation of the matter, as USCBP conducted no investigation.

The facts with regard to Melchor Vargas Silva are less clear.  Defendants listed him in the same category (eligible for "U" visa but denied LEC by federal law enforcement authority) in their original arguments, but do not mention him in the reply brief.  The facts presented do not support a claim that defendants failed to exercise discretion – just that the denial of the LEC was not reasonable or supported by the record.  However, it is unclear why the LEC request was denied as to Vargas Silva.

Nevertheless, the court finds that defendants did not fail to exercise discretion in their denial of plaintiffs' requests for LECs.  Rather, they did exercise their discretion – by denying the LEC requests.

Moreover, the denial of LECs is a discretionary act and not subject to judicial review. Under 8 U.S.C. § 1184(p), a "U" visa applicant is required to obtain an LEC stating that the applicant "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of criminal activity.  However, the statute does not contain any mandatory language with regard to actions by law enforcement officials.  Specifically, there is no

United States District Court

For the Northern District of California

1   statutory directive to law enforcement officials to issue LECs.

2       Under the REAL ID Act, the courts lack all jurisdiction over challenges to "any

3   decision or action of the Attorney General or the Secretary of Homeland Security the

4   authority for which is specified under this subchapter [8 U.S.C. §§ 1151-1381] to be in the

5   discretion of the Attorney General or the Secretary of Homeland Security," other than the

6   granting of asylum under 8 U.S.C. § 1158(a).  See 8 U.S.C. § 1252(a)(2)(B); see also

7   Freeman v. Gonzalez, 444 F.3d 1031, 1037 (9th Cir. 2006).  Accordingly, the court lacks

8   jurisdiction to review a claim regarding the denial of LECs.

9       5.   Due process claims

10      The FAC alleges due process violations in all causes of action except the fifth.

11  Defendants contend that the due process claims should be dismissed because plaintiffs fail

12  to state a cognizable due process interest.  They assert that plaintiffs' opposition appears to

13  rely on authority that might establish a right to apply for certain immigration benefits, but not

14  to the ultimate receipt of those benefits.

15      Defendants assert that each of plaintiffs' claims in the FAC is based on a unilateral

16  expectation of a benefit, such as the receipt of a "U" visa, a derivative visa, LPR status,

17  naturalization, or an LEC; or the promulgation of regulations regarding the issuance of law

18  enforcement certifications; or the issuance of employment authorization.  Defendants argue

19  that where, as here, plaintiffs have not established a due process right to any of these

20  benefits, the court should dismiss the due process claims asserted in each of the five

21  causes of action.

22      In opposition, plaintiffs assert that they have a cognizable due process interest in

23  applying for and receiving an adjudication of their eligibility for "U" visas, and in obtaining

24  related benefits.  In support, they cite Goldberg v. Kelly, 397 U.S. 254 (1970) (welfare

25  recipients had claim of entitlement to welfare payments grounded in statute defining

26  eligibility, and had right to hearing at which they might attempt to demonstrate eligibility);

27  Mallette v. Arlington County Employees' Supplemental Retirement Sys. II, 91 F.3d 630,

28  638-39 (4th Cir. 1996) (plaintiff had due process right to apply for statutory benefits,

United States District Court

For the Northern District of California

1    collecting cases); <u>Orantes-Hernandez</u>, 919 F.2d at 553 (plaintiff had due process right to

2    apply for political asylum); <u>Haitian Refugee Ctr., Inc. v. Nelson</u>, 872 F.2d 1555, 1562 (11th

3    Cir. 1989) (plaintiffs had due process right to apply for Special Agricultural Worker amnesty

4    status); and <u>Griffeth v. Detrich</u>, 603 F.2d 118, 120-22 (9th Cir. 1979) (plaintiff had due

5    process right to apply for general relief).

6        The Fifth Amendment prohibits the United States from depriving persons of "life,

7    liberty, or property, without due process of law." U.S. Const. amend. V.  As a threshold

8    requirement to any due process claim, the plaintiffs must show that they have a protected

9    property or liberty interest.  <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564,

10   569-71 (1972).  To establish a liberty or property interest, the plaintiff must demonstrate

11   that the Constitution or a federal or state statute grants him a protected right.  <u>See Kwai</u>

12   <u>Fun Wong v. United States</u>, 373 F.3d 952, 967-68 (9th Cir. 2004).

13       The FAC does not allege that the statutes at issue in this case create a protected

14   interest.  While the Supreme Court has held that non-discretionary statutes may create

15   property interests for the purpose of procedural due process, it has also ruled that "[a]

16   benefit is not a protected entitlement if government officials may grant or deny it in their

17   discretion."  <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 756 (2005).

18       The court finds that the motion must be GRANTED.  The statutes at issue here are

19   discretionary.  Plaintiffs do not allege that they qualified for "U" visas under the statute and

20   regulations but were prevented from applying for "U" visas – just that they have not

21   received them.  However, they do not allege facts or cite legal authority showing that they

22   have a constitutional due process right to <u>receive</u> "U" visas, nor have they even alleged

23   facts showing that their due process rights were violated during the course of the

24   application process.

25       6.    Equal protection claims

26       In the fifth cause of action, plaintiffs allege that the "U" visa provision at 8 U.S.C.

27   § 1101(U)(i)(III) operates in conjunction with 8 U.S.C. § 1184(p) to deny "U" visa eligibility

28   to undocumented parents of U.S. citizen children who are the victims of crimes and who

United States District Court

For the Northern District of California

1    cooperated with law enforcement agencies in the investigation of such crimes (or whose

2    parents so cooperated), while granting "U" visa eligibility to the immigrant parents of

3    undocumented and lawful permanent resident children.  Plaintiffs assert that this unequal

4    treatment violates the equal protection guarantees of the Fifth Amendment.  Plaintiffs also

5    allege equal protection violations in the first through fourth and sixth causes of action.

6         Defendants argue that the equal protection claims should be dismissed because

7    none of the plaintiffs allege membership in a burdened group and none allege purposeful

8    discrimination.

9         In opposition, plaintiffs contend that the court "previously rejected this argument,"[7]

10   adding that they "incorporate" the arguments previously presented to the court on this issue

11   in their July 18, 2007, opposition to the previous motion to dismiss.  In their opposition to

12   the previous motion, plaintiffs argued that the challenged classification scheme "burdens

13   innocent children's right to family integrity" and therefore "must . . . be substantially related

14   to an important government interest."

15        They asserted that because the challenged classification system under the "U" visa

16   "targets innocent children and burdens their right to family integrity," intermediate scrutiny –

17   not the rational basis test – should be applied.  Plaintiffs noted that in Plyler v. Doe, 457

18   U.S. 202, 221 (1982), the Supreme Court held that intermediate scrutiny should be applied

19   when a law discriminates against children on the basis of their immigration status and

20   burdens their interest in public education.  According to plaintiffs, "the Court found

21   education sufficiently important to warrant intermediate scrutiny where the classification

22   singled out children for a status."

23        Plaintiffs asserted that their case for intermediate scrutiny in the present case "is

24   even stronger," as the statute burdens U.S. citizen children because they are citizens,

25   denying them the support of their parents based on "a status they acquired at birth and for

26   which they bear no responsibility."  The remainder of this excerpt from plaintiffs' previous

27

28        _____

          [7] Plaintiffs' assertion notwithstanding, the court did not previously rule on this issue.

United States District Court

For the Northern District of California

1  oppositions seems to be directed toward the arguments that defendants made in the

2  original motion to dismiss.  Plaintiffs do not directly respond to the argument defendants

3  make in this motion.

4       The Equal Protection Clause of the Fourteenth Amendment commands that no state

5  shall "deny to any person within its jurisdiction the equal protection of the laws," which

6  amounts to a direction that all persons who are similarly situated should be treated alike.

7  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  The equal protection

8  component of the Fifth Amendment's Due Process Clause imposes a similar obligation on

9  the federal government.  High Tech Gays v. Defense Indus. Security Clearance Office, 895

10  F.2d 563, 570-71 (9th Cir. 1990).

11       In order to maintain an equal protection claim, plaintiffs must identify membership in

12  a classification or group whose rights have been burdened by defendants' discriminatory

13  application of the law, or whose rights are differently burdened than those of other groups.

14  Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995).  Here, however, no

15  plaintiff has alleged that he/she/it is a victim of any purposeful discrimination.  Thus,

16  plaintiffs have not stated a claim of an equal protection violation, and the motion must be

17  GRANTED.

18       Moreover, in connection with the fifth cause of action, plaintiffs claim that the VTVPA

19  discriminates against (undocumented) immigrant parents of U.S. citizen children crime

20  victims because those parents cannot obtain derivative "U" visas, while the

21  (undocumented) immigrant parents of (undocumented) immigrant children crime victims

22  can.  However, none of the plaintiffs alleges that he/she is an (undocumented) immigrant

23  parent of a U.S. citizen child crime victim.  Thus, no claim is stated.

**CONCLUSION**

25       In accordance with the foregoing, the court GRANTS the motion to dismiss.  To the

26  extent that plaintiffs intended to allege in the second cause of action that plaintiffs Marlinda

27  Clarke, Patricia Garcia, and Blanca Rossell were unlawfully prevented from applying for

28  derivative "U" visas, a claim that presupposes that the principal beneficiaries from whom

1   they derive their derivative status applied for "U" visas, plaintiffs may amend the complaint

2   to so state.  To the extent that plaintiffs believe that the pleading of additional allegations

3   will produce a cognizable claim of due process or equal protection violations, they may do

4   so.  These are the only claims that plaintiffs may amend.  Otherwise, the dismissal is

5   without leave to amend.  Any amended complaint shall be filed no later than February 2,

6   2008.

7

8   **IT IS SO ORDERED.**

9   Dated:  December 22, 2008

10                                                                          _____
                                                                            PHYLLIS J. HAMILTON
11                                                                          United States District Judge

**United States District Court**
For the Northern District of California